**HAMILTON, Plaintiff-Appellee, v. CLEVELAND
(Transit System) (City), Defendant-Appellant.**

Ohio Appeals, Eighth District, Cuyahoga County.

No. 22303.   Decided February 18, 1952.

500

Sindell & Sindell, Cleveland, for plaintiff-appellee.
R. J. Shoup, R. C. Green, Cleveland, for defendant-appellant.

## OPINION

By HURD, J:

This was an action of tort instituted by plaintiff to recover damages for injuries claimed to have been proximately caused by defendant's negligence when plaintiff was a passenger on one of defendant's motor coaches.

A noval factual situation is presented, involving important principles of law governing common carrier-passenger relationships. Plaintiff alleges in her second amended petition, in substance, that on or about the 12th day of April, 1949, at about five o'clock P. M. she became a passenger on a Cedar Avenue line bus operating in a generally easterly direction in the City of Cleveland, boarding said bus at the intersection of Ashland Road and Cedar Avenue; that she seated herself in the front part of the bus; that subsequently another passenger boarded the bus and, standing at the side of the operator, proceeded to engage the operator in extended conversation; that the operator likewise engaged in conversation with the passenger while operating the bus; that while so engaged in conversation, the passenger removed a loaded revolver from his pocket, showing the same to the operator; that the operator carelessly and negligently permitted the passenger to expose and handle the revolver; that without warning to plaintiff, the revolver was suddenly and violently discharged; the explosion causing a concussion of the brain, injuries to the structure thereof, a rupture of plaintiff's eardrum and other injuries described at length in the petition.

The petition contains five specifications of negligence. Summarizing and paraphrasing these specifications, it is alleged in substance that the defendant was negligent in failing to exercise the highest degree of care consistent with the normal operation of the railway, in that the operator of the motor coach, in disregard of the safety of other passengers, negligently carried on a running conversation with a passenger who was, during the course of the conversation, exhibiting and handling a loaded gun in such a manner that it was discharged, injuring the plaintiff, when the operator knew, or should have known, that in all reasonable probability danger to fellow passengers, including the plaintiff, was thereby created and existed or was reasonably to be apprehended and

that by the use of a proper care on his part the injury could have been prevented.

The answer of defendant, while denying generally the allegations of the petition, admits that plaintiff was a passenger and that another passenger discharged a revolver.

Upon trial, the testimony of plaintiff supported the general allegations of the petition. In particular, she testified that she seated herself opposite the operator of the bus when it reached East 62nd Street; that at East 79th Street a policeman friend of the bus driver boarded the bus and immediately engaged in conversation with the driver, exhibiting to him a black object, which the evidence developed was a 32 Caliber Colt Automatic revolver. The plaintiff testified that the policeman passenger was showing this revolver to the bus driver for a period of four or five minutes, when the revolver was discharged so that there was "a terrific explosion, a terrific blast," by reason of which she suffered the injuries of which she complains. Plaintiff testified further that the operator of the coach, during the conversation with the passenger, was watching "whatever this man had in his hand" and was giving such close attention to the conversation that he almost ran into a car coming from the opposite direction.

The evidence also shows that at the time plaintiff was injured by the concussion resulting from the discharge of the gun, the bus driver was shot in the leg and was immediately removed from the bus to a hospital.

Upon the conclusion of all the evidence, the court, upon request of the defendant, over objection of plaintiff, submitted in writing two interrogatories for answer of the jury, to be returned with the general verdict. The jury returned a general verdict for plaintiff in the sum of Nine Thousand Dollars ($9,000.00). The interrogatories and the answers returned thereto were:

"1. Do you find from the evidence in this case that the motor coach driver was guilty of any negligence?

"A. Yes.

"2. State in what respect that negligence consisted.

"A. Violation of company rule. Negligence in driver having unnecessary conversation with passenger and paying attention to conversation of passenger."

A motion for judgment non obstante veredicto, a motion for judgment on the interrogatories and a motion for new trial having been overruled, the case is now before this court, having been appealed on questions of law.

No question is seriously raised as to the nature and extent of plaintiff's injuries, or as to the amount of the jury's verdict, but an issue of sufficiency is raised as to the questions

of negligence and proximate cause, the defendant's first and second assignments of error being:

"1. That the court erred in overruling the motion of defendant for a directed verdict made at the conclusion of plaintiff's case and renewed at the close of all the evidence.

"2. In overruling motion for judgment non obstante veredicto."

Other assignments of error are:

"3. In overruling motion of defendant for judgment on finding of fact submitted by defendant, and answer thereto.

"4. Error in the admission of evidence.

"5. Error in charging the jury respecting Rule T, the rule against conversation by the Operator."

Considering first, assignments of error one and two, the record sets forth a pertinent comment made by the trial judge when passing upon a motion for a directed verdict, which we quote in part as follows:

"Evidence in this case discloses the plaintiff was a passenger, having boarded a bus of the defendant Cleveland Transit System, a bus or a trackless trolley, on Cedar Avenue in the vicinity of Ashland Road, and as a consequence it became the duty of the defendant, the duty which is owed to plaintiff, to exercise the highest degree of care for the safety and protection of the plaintiff as a passenger commensurate with the normal management and operation of the defendant's business * * *.

"The nature of the negligence claimed in this case as set forth in the plaintiff's petition is to be distinguished from the nature of the cases almost universally found in the authorities cited by counsel for the defendant as its reasons for the motion which was made. Practically all of those authorities are based upon the theory that the plaintiffs were suing the carriers for negligence in preventing a wilful act or wilful tort by a third person.

"Plaintiff's evidence in this case is that after she boarded the trolley bus, soon thereafter a third person boarded the bus and almost immediately engaged the operator in a conversation and during the course of the conversation he extracted from his pocket an object, which later turned out to be a pistol, and in the course of this conversation with the defendant's employee, lasting four or five minutes as the plaintiff's evidence indicates, that this pistol was exploded and that as a consequence of this explosion of the pistol the plaintiff in this case suffered a punctured eardrum and the injury which she told of on the witness stand.

"The evidence in this case indicates, and giving it most favorable interpretation, that for a matter of four or five

minutes the motor operator knew, saw and probably engaged in conversation with the passenger holding the pistol: that he did nothing to warn this passenger of the danger of exhibiting and fondling a gun in the loaded bus.

"There is nothing in the record to indicate that the operator ordered the passenger to put the pistol in his pocket, but on the contrary, the evidence supports the plaintiff's theory that the bus driver engaged in a conversation with this passenger about the gun, independently of the evidence of the so-called rule governing the employee, the rule of the Cleveland Transit System which presumably proscribes any lengthy conversations with passengers, independently of that rule, it is the court's view that there is a sufficient amount of evidence to go to the jury as to whether or not this motor operator or this trolley bus operator was guilty of negligence in permitting this passenger to be fondling this pistol in this loaded bus * * *. It is the view of the court that these questions are jury questions, the question of negligence and the question of proximate cause of such negligence are jury questions, questions which must be submitted to the jury in the face of the evidence that we have before us."

If this statement made by the court for the record is correct, the issue of sufficiency raised by assignments of error numbers one and two is well met.

Counsel are in agreement as to the applicable law, to this extent that both rely upon the rule stated in 13 Corpus Juris Secundum, page 1295 wherein the author states:

"It follows that the liability of the carrier arises not alone from the fact that the passenger has been injured, but from the failure of its agents or servants to afford him proper protection, and hence unless such agents or servants know or ought to know that danger from fellow passenger exists or is reasonably to be apprehended, and can, by the use of proper care, prevent the injury, the carrier is not liable. Thus the carrier is not liable where the injury is caused by acts of a fellow passenger, which its agents or employees had no reason to apprehend, and which they could not, by the exercise of proper care, prevent. It has been stated broadly that a carrier is required to interfere with the voluntary acts of passengers only where such acts constitute a breach of the peace or are such as to suggest a reasonable probability that injury will result to others."

To the same effect see also: 10 American Jurisprudence "Carriers" Sec. 1454 and Sec. 1455, pages 268, 269. See also: Annotation in 140 A. L. R. p. 1194, where the author comments:

"The general rule is that a carrier will not be held liable for injuries to passengers caused by the negligent or meddlesome conduct of other passengers, unless the carrier has notice of such conduct and reason to anticipate that injury may result therefrom."

And at page 1195:

"Conversely, where a carrier permits conduct on the part of its passengers which may reasonably be foreseen to result in injury to other passengers and such injury follows the carrier will be liable."

Many cases from many jurisdictions are cited in support of this Annotation which discusses liability of a carrier for an injury to a passenger, caused by the negligent or meddlesome conduct of a fellow passenger, but which excludes liability for an assault by one passenger on another, a subject with which we are not here concerned.

The prime test applicable to all carriers in cases of this type, is the presence or absence of evidence of notice or knowledge on the part of the employee of the carrier. This means evidence showing that the employee knew or, in the exercise of due care, should have known from all the facts and circumstances that danger of injury to the passenger was created or existed or was reasonably to be apprehended in time to take some reasonable action or precaution looking to the prevention thereof.

In the absence of such notice or knowledge, there is no liability but in the presence of evidence of such notice or knowledge it becomes a question of fact for the jury whether a railway employee, a conductor or operator, exercised that degree of care required of him by law. If the evidence of such knowledge is present, it follows that the question of proximate cause likewise becomes a question of fact for the jury.

The evidence in the instant case shows that the bus operator and the policeman passenger were on friendly terms, the policeman who was off duty at the time having been formerly a bus driver himself, and a fellow employee of the bus driver of the transit system. The evidence also shows they were both interested in guns and it is admitted by both that the conversation was about the gun.

There is evidence tending to show, although in dispute, the running conversation between the bus driver and the policeman friend, was carried on from the time the latter boarded the bus until the time the gun exploded; that meanwhile the bus driver was continuing to operate the crowded bus, stopping to take on and discharge passengers, all of which was taking place on a busy street during a heavy rush hour of traffic.

There is evidence, although in dispute, tending to show that the gun was exhibited during the entire period of the conversation.

The policeman passenger admitted on cross-examination that he made a written report to his superior in the police department that at the time in question he was "showing" the gun to the transit bus driver when it exploded.

Under these circumstances, it is quite probable that a few words of warning to put the gun away would have been sufficient, there being ample time to give such warning, if the jury believed the testimony of plaintiff, which by its general verdict and its answers to the interrogatories it evidently did. There is no evidence of such warning or admonition of any kind, but on the contrary, an apparent acquiescence or participation in the course of conduct which led to the explosion and resulting injuries.

Upon consideration of the entire record, we cannot say that evidence was lacking to support the material allegations of the petition. Applying the settled principles of law to the evidence, we conclude that the trial court did not err in submitting the case to the jury and in overruling the motion for judgment non obstante veredicto.

Considering now the error claimed in admission in evidence of the company rule T (3) and the claimed error on the part of the court in charging the jury respecting this rule, we find that the record shows that the court admitted over objection of defendant a company rule reading as follows:

"T. Passengers in coach:

"* * *

"(3) Operators should answer all questions politely and accurately but should never carry on a conversation with a passenger beyond the point of necessity."

We think this assignment of error must be overruled, since the Supreme Court has established the law on this subject in the case of **Cincinnati Street Railway Co. v. Altemeier, 60 Oh St 10.** In that case which apparently has not been overruled or modified, the court held:

"Rules adopted by a street railway company for the government of its employees in operating such railway are competent evidence when relevant, in the trial of a cause of damages for personal injury caused by the negligence of the servants of such company."

There can be no doubt under the facts of the instant case that the rule in question was adopted by the defendant for the government of the coach operators, and was relevant to a determination of the issue of negligence on the part of the carrier, because undoubtedly the failure of its observance had

a direct bearing upon the event which was responsible for the injury. If the employee of the carrier had recognized this rule and had complied with it, it is quite probable, if not certain, that the injury complained of would not have occurred. The jury, by its special verdict, determined that the conversation had been carried on beyond the point of necessity. The evidence is clear that there was no necessity for the conversation, with its concurrent circumstances, and if it had not occurred it is probable, if not certain, that the policeman friend of the bus driver would not have exhibited the gun and that there would have been no accidental explosion thereof and no resulting injury either to the bus driver himself or to his passenger. We think that in view of the issues made by the pleadings and evidence, the company rule was relevant and its admission in evidence did not constitute prejudicial error.

Considering next the error claimed in charging the jury in respect of the company rule. The record shows that the jury was instructed as follows:

"Evidence has been offered with respect to a rule of conduct promulgated by defendant for the government of its operators in their relation to passengers with respect to the subject of conversation with said passengers. You are instructed that a violation of such rule, if the jury finds such to have been the fact, is not negligence as a matter of law, but such a regulation is admissible in evidence as bearing on the question of the want of ordinary care. It is for the jury to determine, if the jury finds that a violation of such rule has been proven by the greater weight of the evidence, whether or not such violation constitutes negligence."

It should be noted that the court did not charge the jury that violation of the rule, if they found it was violated, would be negligence per se, but instead instructed that such regulation was admitted in evidence only as bearing on the question of want of ordinary care and that it was a question of fact for the jury's determination whether or not violation of such rule constituted negligence.

We conclude that the rule having been properly admitted in evidence, for the purpose indicated, the court did not commit prejudicial error in the charge theron. Therefore, assignments of error Nos. 3 and 4 are overruled.

This leaves for our final consideration the claimed error relating to the interrogatories and the action of the trial court in overruling motion of defendant for judgment on findings of fact returned in answer to the interrogatories notwithstanding the general verdict.

It is contended by counsel for defendant that the answer

to the interrogatories is not a finding which would justify the imposition of liability on defendant, on the ground that the special findings are in conflict with the general verdict and irreconcilable therewith. No issue was raised nor could there be, in respect to the answer to the first interrogatory where the jury answered in the affirmative as to the negligence of the defendant, because this harmonizes perfectly with the general verdict.

Sec. 11420-17 GC provides:

"When either party requests it, the court shall instruct the jurors, if they render a general verdict, specially to find upon particular questions of fact to be stated in writing, and shall direct a written finding thereon. The verdict and finding must be entered on the journal and filed with the clerk."

Sec. 11420-18 GC provides:

"When a special finding is inconsistent with the general verdict the former shall control the latter and the court may give judgment accordingly."

Our first question in considering this assignment of error is whether the answer to interrogatory No. 2 is inconsistent with the general verdict within the meaning of §11420-17 and §11420-18 GC as above quoted.

It has been held that special findings cannot override the general verdict unless they are in irreconcilable conflict with it. Prendergast v. Ginsburg, 119 Oh St 360; Davis v. Turner, 69 Oh St 101; Chris Holl Hardware Co. v. Logan Brick Co., 84 Oh St 455. The conflict between the general verdict and special findings must be clear and irreconcilable to warrant setting aside the general verdict. Ohio Fuel Gas Co. v. Ringler, 126 Oh St 409.

In determining whether irreconcilable conflict exists between the general verdict and special findings, the court does not weigh the evidence but considers only the pleadings, issues and special and general findings. Board of Commissioners of Mercer Co. v. Deitsch, 94 Oh St 1; Fox v. Conway et al., 133 Oh St 273.

The Supreme Court in two comparatively recent cases, has reaffirmed the principles of law enunciated in the earlier cases and has marked clearly and unmistakably the path to be followed when considering special findings of fact of a jury in relation to its general verdict.

In the case of Klever v. Reid Bros Co., 151 Oh St 467, it was held:

"It is the duty of the court to harmonize, if possible, a special finding of a jury with its general verdict." (Syllabus 1)

And in the case of McNees, appellee v. Cincinnati Street Railway Co., 152 Oh St 269, it was held:

"The answers of a jury to special interrogatories will not authorize a judgment different from that authorized by a general verdict where such answers can be reconciled with the general verdict. (Davis v. Turner, 69 Oh St 101, and Ohio Fuel Gas Co. v. Ringler, 126 Oh St 409, approved and followed.)" (Syllabus 1)

With these principles in view we proceed to analyze the relationship between the general verdict and the finding of fact in answer to the special interrogatory number two.

It is first to be considered that the general verdict in favor of the plaintiff was a finding for her on the issues raised by the pleadings and the evidence. We have heretofore summarized the allegations of the petition making it unnecessary to detail the same at length here. Suffice it to say, that the specifications of negligence include and emphasize the claim that the exhibition of the revolver and its discharge occurred during a running conversation with the bus operator. The charge of negligence on the part of the operator as employee of defendant, under the doctrine of respondeat superior, in engaging in an unnecessary conversation with a passenger, is clearly raised by specifications of negligence two and four as follows:

"2. In permitting, suffering and allowing a passenger in a public motor vehicle to display, handle and demonstrate a firearm to the bus operator, when defendant knew, or in the exercise of the highest degree of care should have foreseen that in all probability a firearm would be discharged to the injury of other passengers, and the plaintiff in particular."

"4. Defendant was negligent in continuing to operate said bus at a time when a gun was being exhibited to him for plaintiff avers that said gun thereby was discharged due to a combination of the uneven movement of the bus and the manner in which the passenger was grasping the gun."

The denial in the answer of defendant created the issues on this subject. The jury answered in part:

"Violation of company rule."

We find no reference to "company rule" in the pleadings and this sentence standing alone would have little or no meaning when considered in relation to the pleadings alone. On the other hand, it is not in any way inconsistent with the general verdict. However, more light is thrown upon the subject when we consider the second sentence of the answer to the interrogatory, viz:

"Negligence in driver having unnecessary conversation with passenger and paying attention to conversation of passenger." (Emphasis added.)

This answer certainly points up the issues raised in the petition generally, and specifications two and four particularly,

where it is alleged that the bus operator was negligent in "permitting, suffering and allowing a passenger * * * to display, handle and demonstrate a firearm to him" * * * and was negligent "in carrying on a running conversation with a gun-toting passenger, thereby wholly failing and neglecting * * *."

While it is not within the province of this Court to consider and weigh the evidence in determining whether or not there is irreconcilable conflict between the general verdict and the special findings, we may consider that an issue was raised by the evidence as well as by the pleadings, when the trial court admitted into evidence the company rule and charged on that subject.

Following the principles of law laid down by the supreme court that if it is reasonably possible so to do, special findings of a jury must be harmonized with the general verdict, we have no difficulty in reaching the rather obvious conclusion that there is no irreconcilable conflict, but on the contrary, complete harmony between the general verdict and special findings Numbers one and two. Undoubtedly the special finding No. 2 leaves something to be desired in the way of completeness, because it failed to include all of the elements of fact raised by the pleadings and the issues. The question presented practically called for a summation of all the elements of negligence contained in the issues the jury was called upon to determine. In the main, these issues were decided by their general verdict. It is naturally difficult for a jury of laymen to answer a question with a nice discriminating sense of logic requiring a certain degree of legal acumen when they are obliged to compress a finding of fact within the narrow limits of a question such as was here presented. Apropos of this phase of the subject, the comment in **39 O. Jur., 1089, Sec. 363,** may be considered pertinent:

"Juries are usually composed of men who are not learned in the forms of law or exact in their use of language, and all reasonable intendments should be made in order to sustain their verdicts, when the validity of such verdicts is challenged on merely technical grounds."

As stated in the beginning, the facts of this case are novel, so much so that counsel have looked in vain for a completely similar factual situation but this should not make it too difficult to apply settled principles of law.

For the reasons generally stated, we find no errors prejudicial to the rights of defendant. The judgment of the Common Pleas Court is therefore affirmed. Exceptions noted. Order see journal.

THOMPSON, J, concurs.
SKEEL, PJ, dissents. (See dissenting opinion.)

## DISSENTING OPINION

By SKEEL, PJ.

The facts have been fully stated in the majority opinion and need not here be repeated. The only basis upon which the plaintiff would have a legal right to recover against the defendant must be founded upon her claims that the defendant was negligent in failing to protect her against the unlawful discharging of a firearm by a fellow passenger. The allegations of negligence are:

1. The defendant failed to furnish plaintiff with safe passage on its public conveyance by allowing and permitting a passenger to handle and exhibit a gun in such a manner as to be discharged.

2. In permitting a passenger to display, handle and demonstrate a gun to the operator and should have foreseen in all probability it would be discharged injuring plaintiff.

3. In failing to immediately prevent by word or action the display of a firearm in said bus when the operator should have known and anticipated that revolvers are likely to go off at any time to the hurt of passengers in the vicinity.

4. In negligently carrying on a running conversation with a gun-toting passenger thereby failing and neglecting to consider and have an awareness of the danger to the plaintiff.

5. In negligently continuing to operate said bus at a time when a gun was being exhibited to him (the operator) it being averred that the gun was discharged due to a combination of the uneven movement of the bus and the manner in which the passenger was grasping the gun.

There is no dispute in the evidence but that a passenger (a city policeman) did have in his possession a 32 Colt Automatic and that as he was showing it to the bus operator it was discharged. The element of time as to when the passenger got on the bus and whether or not the gun was exhibited and discharged before the operator could (in the exercise of the highest degree of care consistent with the operation of the trolley bus), do anything to prevent the passenger from continuing in conduct that might result in injury to other passengers, is in considerable dispute.

No consideration is given, nor was the attention of the jury called to an equally important question. The passenger who had the pistol was a police officer experienced in the care and use of firearms. His possession of a firearm was entirely within the law. His personal conduct, other than attempting to display the automatic pistol to the operator, is not drawn into question by the pleadings or the evidence. To what extent, therefore, under the admitted facts there existed a hazard against which the operator should have acted or had a right

to act, was not given any consideration, although it presented an important jury question. A judgment for the plaintiff which gave no consideration to this question or which was very weak on the time element, was therefore not supported by sufficient evidence. The amount of the verdict was also excessive. The plaintiff's evidence shows conclusively that she did not lose a single day from her work because of the alleged injury said to have been occasioned by the accidental discharge of the pistol.

Coming now to the question of the consistency of the general verdict with the answer to the second interrogatory. Before setting forth the interrogatory it should be noted that objection was interposed to the introduction of the company rule which objection should have been sustained by the court and the overruling of such objection constituted prejudicial error.

Proceeding upon the record, however, as it now stands the interrogatories were as follows:

"1. Do you find from the evidence in the case that the coach driver was guilty of any negligence?" To which interrogatory the jury answered, "Yes."

"2. If your answer to Interrogatory No. 1 is in the affirmative, then answer No. 2.

"State in which respect that negligence consisted."

To which interrogatory the jury answered:

"Violations of company rule. Negligence in driver having unnecessary conversation with passenger and paying attention to conversation of a passenger."

From the foregoing answers the jury to be consistent should have found against the plaintiff for the reason that the violation of a rule prohibiting unnecessary conversation with a passenger could not be the proximate cause of the plaintiff's injuries, sustained because of the failure to prevent a passenger from discharging a firearm. The verdict is, therefore, inconsistent with the answers to the interrogatories and under the provisions of §11420-18 GC, if the general verdict is inconsistent with the special findings, the court is bound by the special findings. The violation of the company rule not being or claimed to be a proximate cause of plaintiff's injuries the judgment of the court should have been for the defendant.