Helen MARTIN and Walter H. Martin, Plaintiffs-Appellees,

v.

ERIE–LACKAWANNA RAILROAD COMPANY, Defendant-Appellant.

No. 17837.

United States Court of Appeals
Sixth Circuit.

Feb. 10, 1968.

---

Robert B. Preston, Cleveland, Ohio, Arter, Hadden, Wykoff & Van Duzer, Cleveland, Ohio, on brief, for appellant.

Nathan L. Sieman, Warren, Ohio, Sieman, Sieman & Sieman, Warren, Ohio, on brief, for appellee.

Before PECK and McCREE, Circuit Judges, and CECIL, Senior Circuit Judge.

PECK, Circuit Judge.

In this action, Mrs. Martin sought to recover damages from defendant-appellant, the Erie-Lackawanna Railroad Company (hereinafter "defendant") for injuries sustained when, as the victim of an abortive purse-snatching attempt occurring on the premises of defendant's Warren, Ohio, passenger station, she was knocked to the ground. Mr. Martin, who was accompanying his wife at the time the attempted purse snatching took place, also asserted a cause of action based upon the loss of his wife's services. After removal from the Common Pleas Court for Trumbull County, Ohio, to the United States District Court for the

Northern District of Ohio, the case was tried before a jury which returned a general verdict in favor of plaintiffs in the amount of $22,500.

The evidence shows that plaintiffs-appellees (hereinafter "plaintiffs") arrived at defendant's passenger station at approximately 7:30 p. m. on the evening of December 22, 1963, for the purpose of catching the 7:30 train. Shortly after their arrival at the depot, one of the plaintiffs was informed by a Mr. Cartwright, defendant's ticket clerk and sole employee on duty at the station that evening, that the 7:30 train was on time. With this information in mind, and because Mrs. Martin was warm and wanted a breath of fresh air, plaintiffs left the waiting room and went outside to the location on the platform from which they anticipated boarding the train. Subsequent to plaintiffs' departure from the waiting room, Mr. Cartwright learned that the 7:30 train was going to be ten to twelve minutes late.

While plaintiffs were in the station, they had observed two men who were later identified as Mrs. Martin's assailants. At this time, however, the presence of these two men aroused no suspicion on the part of plaintiffs. Mr. Cartwright, who likewise observed these two men in the waiting room shortly before the purse-snatching incident, also testified that he was not suspicious of them. Mr. Cartwright did not see the men leave the station.

In the complaint, plaintiffs alleged that defendant's employees knew that plaintiffs' assailants "had a police record of shoplifting, stealing and conducting themselves in an unlawful and suspicious manner," and thus "knew,

had reason to believe, and should have anticipated the likelihood of said men attempting to accost those waiting to board trains. . . ." It was alleged that defendant was negligent in failing to warn plaintiffs of the danger, in failing to effect the departure of the two men by either requesting them to leave or by forcefully ejecting them, in failing to provide police protection for those outside the station, in failing to adequately light the premises outside the station, and in failing to safely escort plaintiffs aboard the train.[1]

Defendant maintains that it cannot be charged with the failure to take affirmative action to protect plaintiffs from a danger which it could not reasonably have anticipated. Defendant moved at the close of plaintiffs' evidence for a directed verdict based upon the insufficiency of the evidence concerning the likelihood of the assault which occurred. At the close of all the evidence, and subsequent to oral argument but prior to the court's charge to the jury, defendant renewed its motion. While plaintiffs' counsel conceded at oral argument before this court that the District Judge overruled this motion on the merits, he also claims that the motion was untimely under Rule 50, F.R.Civ.P. We believe the District Court properly entertained the motion as seasonably made, neither the letter nor spirit of Rule 50 requiring the strict construction urged by plaintiffs:

"Rule 50(a) provides for a motion for a directed verdict at the close of the plaintiff's evidence or at the close of the evidence *and before the case is submitted to the jury.* It enables the court to determine whether there is any question of fact to be submitted

---

1. Plaintiffs also argue here that Mr. Cartwright's failure "to go to the baggage and mail car before the train arrived as was part of the ticket clerk's duties, in which event he would have been [near where plaintiffs were standing on the platform when attacked] and the assault would never have been undertaken," might be considered negligence. This position is completely without merit. The evidence establishes that Mr. Cartwright's duties consisted of placing the baggage and mail on the trains after they arrived. In any event, defendant owed plaintiffs no duty upon which tort liability might be based in the instant case with respect to the manner in which baggage and mail is transferred from the station onto the trains.

to the jury and whether any verdict other than the one directed would be erroneous as a matter of law. It is conceived as a device to save the time and trouble involved in a lengthy jury determination." 2 Barron & Holtzoff § 1071 (Wright ed. 1961) (Emphasis added.)

Plaintiffs do not claim that they were prejudiced by the fact that the motion for directed verdict was renewed subsequent to oral argument rather than prior thereto. See Rules 1 and 61, F.R. Civ.P. It follows that defendant's subsequent motion for judgment notwithstanding the verdict suffers no infirmity and that the sufficiency of the evidence may properly be reviewed on this appeal.

■ Although defendant sets forth in its appellate brief numerous authorities in support of what it considers to be the applicable law, no question is cast upon the propriety or adequacy of the District Court's charge to the jury. That charge does no violence to the relevant principles announced by the Ohio judiciary (Paal v. Cleveland Ry. Co., 11 Ohio App. 462 (1918); Hamilton v. City of Cleveland, 93 Ohio App. 93, 110 N.E.2d 50 (1952)), and since neither party objected or proffered suggested amendments or additions thereto, it is here accepted as correct for purposes of this appeal. In the charge, the trial judge stated in pertinent part:

> "If the railroad knows, or should know, from all the facts and circumstances that conditions at a train station are such that a passenger is likely to be the subject of an unprovoked assault or any harm, the law imposes a duty upon the railroad to take such steps or actions as a reasonably prudent person would take in order to avoid a threatened harm. If the circumstances are such that there arises a duty on the part of the railroad to take such steps to avoid a likely danger, and it fails to do so, such failure upon the part of the railroad would constitute negligence."

Defendant argues that each of the negligent acts or omissions alleged in the complaint is based upon the assumption that defendant knew or should have known that plaintiffs were in a perilous position or that an attack upon Mrs. Martin was imminent or likely. While this is of course true, the facts which support the allegations that defendant failed to provide police protection for its passengers, failed to provide adequate lighting on the outside platform, and failed to inform plaintiffs that the train in which they had expressed an interest was expected to be late, are also relevant to the issue of whether defendant knew, or should have known, that Mrs. Martin was likely to be the subject of an attack. Viewing the evidence in support of these three allegations most favorably toward plaintiffs, the jury was entitled to find that defendant knew plaintiffs had gone out upon a dimly lit and unguarded platform to await the arrival of a train which was not expected to arrive for approximately ten minutes. While these facts might suggest a situation such as would not discourage those with criminal propensities from taking advantage of plaintiffs, these circumstances would not, in and of themselves, be sufficient to support a determination that defendant should have known of the likelihood of an attack.

There remains for consideration the factor that Mr. Cartwright had observed plaintiffs' assailants in the railroad depot on the evening of and prior to the assault in question. To reiterate, Mr. Cartwright testified that the presence in the train station of the two men who were later identified as Mrs. Martin's attackers gave him no cause for suspicion prior to the incident. As a basis for this conclusion, he stated that the two men had been in the station on previous occasions, sometimes as often as two or three times a week, although never, to his knowledge, had they purchased railroad tickets, had any luggage or met anyone arriving or departing on the trains. They would come in and talk between themselves, smoke a cigarette, use the rest rooms or get a drink of water and then leave. Generally they

would stay at the railroad station no longer than five or ten minutes. "They never did a thing wrong," Mr. Cartwright testified, and they were never boisterous or observedly intoxicated. The ticket clerk characterized their clothing as "just average street dress," with the qualification that it was "maybe not average, but it was acceptable on the street." Finally, Mr. Cartwright stated that he had not known prior to the instant occurrence whether Mrs. Martin's assailants had a police record.

This testimony was consistent with that of both plaintiffs. Mr. Martin testified that the two men were neither boisterous nor intoxicated on the evening of December 22; that they were dressed in ordinary clothes; that the hair of one of the men "was rather long in the back"; and that he "was not suspicious of them at any time until it happened." Mrs. Martin stated that both men had average dress and that there was nothing about their appearance which made her suspicious of them.

Unless it can validly be assumed that a person is criminally inclined merely because he periodically stops in the passenger waiting room of a railroad station for reasons unconnected with any business of the railroad, the above evidence hardly supports plaintiffs' position. Nor is plaintiffs' cause furthered by counsel's novel argument that a photograph (a police "mug shot") admitted into evidence of one of Mrs. Martin's assailants clearly shows "him to have the usual facial features, expression and characteristics of a criminal. . . . His eyes had a stealthy appearance. The expression of his face was that of a criminal. His long and unkempt hair, particularly in the back, reminded any intelligent person that he was not the ordinary law-abiding type of individual."

■ Construing the evidence adduced at trial (and all permissible inferences therefrom) in a light most favorable to plaintiffs, it is here found to be insufficient as a matter of law to support a determination that defendant knew, or should have known, that Mrs. Martin

was likely to be the subject of an unprovoked assault. Except from the vantage point of hindsight, there is nothing imputable to defendant which might have suggested that an assault upon Mrs. Martin was threatened or imminent. We find nothing in the totality of circumstances confronting defendant on the evening of December 22 from which it might have anticipated anything other than an ordinary, uneventful evening. It follows that the District Court erred in denying defendant's motion for judgment notwithstanding the verdict.

Accordingly, the judgment of the District Court is reversed and the cause remanded with instructions that final judgment be entered in favor of defendant.