**William D. EVANS, Plaintiff–Appellee,**

v.

**James H. DETLEFSEN,
Defendant–Appellant.**

**Nos. 86–5754, 86–6024.**

United States Court of Appeals,
Sixth Circuit.

Argued Aug. 14, 1987.

Decided Sept. 15, 1988.

James L. Charles, William L. Parker, Jr., William L. Parker, Jr. (argued) Legal Advisor MPD, Nashville, Tenn., for defendant-appellant.

Ronald McNutt (argued), Richard H. Dinkins, Richard Dinkins, Nashville, Tenn., for plaintiff-appellee.

Before LIVELY, MILBURN and RYAN, Circuit Judges.

RYAN, Circuit Judge.

This is a case about making a federal case out of a traffic ticket.

After the traffic court dismissed the ticket, the ticketed driver sued the ticketing police officer for violating the driver's first, fourth, and fourteenth amendment federal constitutional rights, and for assault and battery, false arrest, malicious prosecution, outrageous conduct, and invasion of privacy. The case is, among other things, an eloquent testimonial to one of the reasons the federal trial and appellate courts are unable to find sufficient hours in the day to consider the kind of litigation for which they were created. That reality was not lost on the jury in this case. After being instructed by the trial court at the close of all the proofs that it must find the defendant liable for violating the plaintiff's first, fourth, and fourteenth amendment rights, and for false arrest and malicious prosecution, the jurors returned a verdict in the aggregate sum of $15,002. The trial court then awarded the plaintiff attorney fees of $22,206.15.

The central issue in the case is whether the district court erred in holding that, as a matter of law, the defendant police officer had no probable cause to arrest the plaintiff for a traffic violation. We hold that it did, and reverse.

## I.

### The Facts

A detailed recitation of the facts is unavoidable if our resolution of the stated issue is to be fully understood. We take the facts from the testimony of the principals, indicating the differences in their respective versions where they are important.

Just before plaintiff Evans and defendant Detlefsen first met, Officer Detlefsen, a member of the Nashville Police Department, had been working a radar post on Broadmoor Road in Nashville, Tennessee, and had just stopped a speeder in a pickup truck. The speeder did not pull off into a parking lot as drivers might ordinarily do under the circumstances, but stopped in his tracks, on the road, blocking traffic, and got out of his truck to talk to Detlefsen. Detlefsen, hatless, got out of his unmarked patrol car to meet the driver midway between their two vehicles. Detlefsen issued two tickets to the driver, one for speeding and one for not having a rear bumper on the truck.

Meanwhile, plaintiff Evans, a retired commercial airline pilot, was caught in the slow moving traffic behind Detlefsen and the pickup truck. The heavy traffic was slowed significantly by the need to form one lane to pass the two vehicles parked in the right lane. Evans was in Nashville on his way to an apartment building he owned in Smyrna, Tennessee, where he kept an apartment. He testified that after a long delay in the sluggish traffic on Broadmoor Road, he pulled into the parking lot of the Third National Bank on the corner of Broadmoor and Dickerson for the purpose of going into the bank and opening an account. However, as soon as he pulled into the lot, he saw that the bank's window shades were down and the bank was closed. Only then did he realize that it was 4:30 p.m., not 3:30 p.m., as he had supposed, because he had forgotten about the recent switch to daylight savings time. The bank's drive-in windows on the opposite side of the building were open, but he gave no thought to using them because one does not go to a bank's drive-in window to open an account.

Evans told the court and jury that as he sat in his car in the parking lot, he looked over to Broadmoor Road and there saw the two vehicles that were causing the traffic jam on Broadmoor. Evans did not realize at this point that Detlefsen was a police

officer issuing a ticket. All he saw was a white car behind a pickup truck, and a bald-headed man in a dark shirt talking to another man. Leaping to the conclusion that these were a couple of "good ole boys," as Evans put it, and that the one "behind got out to say something . . . and they got into one of these things," he sternly informed them, in a commanding voice, that they were blocking traffic. He then pulled through the bank parking lot, exiting on Dickerson Road, turned right, drove a short distance, and then turned off into a restaurant parking lot. He parked, went inside, and ordered some soup.

Detlefsen testified that he did not see Evans until he heard someone yell "son of a bitch." He looked up and immediately saw Evans, directly across from him in the bank parking lot, in time to hear Evans reprimand him for blocking traffic. Angered by the insult, and quickly leaping to the conclusion that the man in the Cadillac was cutting through the parking lot to avoid the traffic light just ahead at the Dickerson intersection, he watched the Cadillac pull out of the parking lot and turn north on Dickerson. He had almost finished his business with the pickup driver, and resolved to catch up with the Cadillac and ticket the driver for driving across private property to avoid a traffic signal on Broadmoor and Dickerson. Accordingly, he quickly finished his business with the pickup driver, turned up Dickerson, found the Cadillac in the restaurant parking lot, and went inside.

Spotting Evans, Detlefsen asked him if he were the driver of the Cadillac. Evans said he was. Detlefsen asked what Evans meant by calling him a son of a bitch. Evans denied having made any such remark. According to Detlefsen, he next asked Evans why he cut across the bank parking lot, and Evans said only that Detlefsen had been blocking traffic so he had to go around. According to Evans, Detlefsen immediately asked to see Evans' driver's license, and said he was going to take him downtown, but would not respond to Evans' repeated requests to be told what the charges were. Despite disagreement about the sequence of the questions and answers, Evans and Detlefsen essentially agree about what was said and not said in the restaurant. Importantly, Evans said nothing about entering the bank parking lot for the purpose of going to the bank.

There followed some pushing and shoving and hostility on both sides. The restaurant manager prevailed upon Detlefsen to wait outside while Evans finished his soup, but Detlefsen returned no more than twenty minutes later and became aggravated at the sight of Evans speaking to another restaurant patron, attempting to take down a name and address so the patron could be a witness to Detlefsen's abusive behavior. Voices were raised. Detlefsen apparently unbuttoned his holster and rested a hand on his pistol in a way Evans found threatening. Evans called upon people in the restaurant to be witnesses for him, several of whom later were. Detlefsen prevented Evans from taking down any names or addresses, finally hustling Evans outside by holding his arm, pausing only long enough for Evans to pay his bill.

Outside, Evans was instructed to produce his car registration which showed an address in Smyrna, Tennessee. His driver's license showed an address in Colorado. Using the Colorado address, Detlefsen issued a ticket to Evans for crossing private property to avoid a traffic signal. He then decided that Evans' real residence was Tennessee and, accordingly, issued him a second ticket for not having a valid Tennessee driver's license. Evans sought to explain that he lived in both Colorado and Tennessee and could have only one driver's license, but Detlefsen was not dissuaded by Evans' argument.

Next, having determined to his satisfaction that Evans was not a Nashville resident, Detlefsen concluded that Evans was eligible to be taken into custody under the Nashville Police Department policy then in effect. A county resident would simply have received tickets and been free to go. Evans, however, was searched, handcuffed, and driven to the police station. There, Evans refused to admit guilt and pay the $25 fine, and therefore had to wait several

hours at the station until a lawyer arrived with exactly $70 in cash to post bail.

Evans eventually appeared before a judge who dismissed both charges. Before the judge, Evans contended, for the first time, that he had gone into the bank parking lot to open an account, and he presented, in support of this explanation, a receipt from the bank dated May 6, three days after the arrest. He said he had returned three days later, when the bank was open, and then completed the errand that originally took him to the bank. Apparently the judge was also convinced by Evans' argument that he should be considered a nonresident for purposes of Tennessee's driver's license law.

Thereafter Evans filed this civil rights action pursuant to 42 U.S.C. § 1983, claiming alleged violations of the first, fourth, and fourteenth amendments, and state claims for false arrest, malicious prosecution, assault and battery, outrageous conduct, invasion of privacy, and related claims not here relevant.

After all the evidence had been presented at trial, both sides sought directed verdicts. The district court partially granted plaintiff Evans' motion, holding that because, as a matter of law, Detlefsen lacked probable cause for an arrest, liability had been established on all three constitutional theories and for false arrest and malicious prosecution, leaving for jury determination only the question of damages. The court also submitted to the jury plaintiff's claims of assault and battery, outrageous conduct, and invasion of privacy. The jury concluded that liability for assault and battery, outrageous conduct, and invasion of privacy had also been established, and awarded a total of $15,002 in damages, as follows:

$3,000 compensatory damages for the constitutional violations

$3,000 compensatory damages for false arrest

$3,000 compensatory damages for malicious prosecution

$1 nominal damages for assault

$1 nominal damages for battery

$3,000 compensatory damages for outrageous conduct

$3,000 compensatory damages for invasion of privacy

The jury was polled and reaffirmed its verdict. The defendant's motions for judgment notwithstanding the verdict and for a new trial were denied. Additionally, plaintiff, as a prevailing party, sought attorney's fees under 42 U.S.C. § 1988. Defendant opposed the fees only to the extent that the plaintiff sought more than a reasonable hourly rate multiplied by the number of hours actually expended. The district court reduced the amount requested and awarded $22,206.15.

Detlefsen now appeals the jury verdict and the attorney fee award as well.

## II.

### The Issues

Appellant has raised a number of issues on appeal but, given our disposition of the first of them, they are reduced to three:

1. Whether the district court erred in holding that, as a matter of law, Detlefsen had no probable cause for concluding that Evans had committed an offense and, in consequence thereof, granting a partial directed verdict on the first, fourth, and fourteenth amendment federal constitutional claims and on the false arrest and malicious prosecution state claims, and

2. Whether there was sufficient evidence of outrageous conduct and invasion of privacy to warrant submitting those claims to the jury, and

3. Whether the district court erred in the award of attorney fees.

## III.

### Probable Cause

The district court directed a verdict for Evans on the central issue in the case: whether, at the time he arrested Evans, Detlefsen had probable cause to believe Evans had committed the offense of crossing private property to avoid obeying a traffic regulation, in violation of the Nashville traffic ordinance, § 27–1–118.

The standard guiding a federal court in passing upon a motion for directed verdict on pendant Tennessee claims, in this case false arrest and malicious prosecution, has been described by this court as follows:

> Tennessee courts require that a trial court presented with a motion for a directed verdict must take the strongest legitimate view of the evidence in favor of the opponent of the motion, allow all reasonable inferences in his or her favor, discard all countervailing evidence, and deny the motion where there is any doubt as to the conclusions to be drawn from the whole evidence. A verdict should not be directed during, or after, trial except where a reasonable mind could draw but one conclusion. *Holmes v. Wilson*, 551 S.W.2d 682, 685 (Tenn. 1977). *See also Sauls v. Evans*, 635 S.W.3d 377, 379 (Tenn.1982); *Crosslin v. Alsup*, 594 S.W.2d 379, 380 (Tenn.1980).

*Arms v. State Farm Fire & Casualty Co.*, 731 F.2d 1245, 1248–49 (6th Cir.1984).

The same "but one reasonable conclusion" standard applies likewise when passing upon a directed verdict on a federal claim, *Brady v. Southern Railway Co.*, 320 U.S. 476, 479, 64 S.Ct. 232, 234, 88 L.Ed. 239 (1943). The standard binding upon this court in passing upon the correctness of the district court's ruling on the directed verdict motion is the same as that which guides a trial court.

> In both the Tennessee and federal court systems, an appellate court reviewing a trial court's action on a directed verdict motion applies the same standard as used in the trial court. *See Holmes*, 552 S.W. 2d at 685; *Gootee*, 712 F.2d at 1062.

*Arms*, 731 F.2d at 1249. In the context of determining the constitutionality of an arrest, the Supreme Court has said:

> When the constitutional validity of an arrest is challenged, it is the function of a court to determine whether the facts available to the officers at the moment of the arrest would "warrant a man of reasonable caution in the belief" that an offense has been committed.

*Beck v. Ohio*, 379 U.S. 89, 96, 85 S.Ct. 223, 228, 13 L.Ed.2d 142 (1964) (quoting *Carroll v. United States*, 267 U.S. 132, 161, 45 S.Ct. 280, 69 L.Ed. 543 (1925)).

The inferences and probabilities suggested by common sense and law enforcement experience are to be taken into account in assessing the facts known to the arresting officer, and:

> [T]he evidence thus collected must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement.

*United States v. Cortez*, 449 U.S. 411, 418, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981). The actual motives of the arresting officer are irrelevant if the objective basis for probable cause is present:

> [T]he fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action.

*Scott v. United States*, 436 U.S. 128, 138, 98 S.Ct. 1717, 1723, 56 L.Ed.2d 168 (1978).

Detlefsen argued that he had probable cause to arrest Evans because the objective indicia of a violation of the Nashville ordinance *forbidding* cutting across private property to avoid a traffic regulation were present. The ordinance provides:

> Sec. 27–1–118. Cutting through private property.
>
> The driver or operator of any vehicle shall not drive upon or through any private property or upon or through any driveway not a part of the street or roadway for the purpose of avoiding obedience to any traffic regulation or ordinance of the metropolitan government. (Bill No. 72–211, 6–20–72).

At argument on the directed verdict motion, the court suggested that there were a number of failings in the defendant's proof with regard to the facts known to Officer Detlefsen that would support a lawful arrest under the ordinance. The court pointed out, sua sponte, that Detlefsen had not actually seen Evans pull off Broadmoor Road onto the private property, and had not seen him at all until Evans stopped his

vehicle in the bank parking lot. The court also stressed that there was no evidence that Evans or Detlefsen looked at the traffic control signal, that the traffic light at the relevant time was actually red, that the light was lawfully erected, or that it was functioning. None of these failings, however, were explicitly relied upon by the district court in granting, in part, the plaintiff's motion for a directed verdict. Instead, the court stated:

The Court finds in this case that the ordinance relied upon, upon which the citation issued, that is 27–1–118, does not in and of itself create an offense under the laws of Metropolitan Government Nashville Davidson County, Tennessee.

The Court construes that applicable ordinance as requiring that there be a showing that driving through or upon any private property or through a driveway not a part of the street or roadway, must be shown to have occurred for the purpose of avoiding obedience to any traffic regulation or ordinance of the Metropolitan Government.

In this record, there is just [an] absolute void of any evidence of any traffic regulation or ordinance of the Metropolitan Government under the circumstances required.

And accordingly, the Court holds that given the facts and circumstances within the defendant's knowledge as reflected in the evidence, the evidence being viewed in the light most favorable to the defendant as opponent of the motion, simply was not sufficient to warrant a prudent person, that is a reasonably competent police officer charged with enforcing the traffic laws of the Municipal Government, that is Nashville Davidson County Metropolitan Government in believing the plaintiff had committed an offense. To hold otherwise in the absence of any evidence of the underlying traffic regulation or ordinance of the municipal government, of which [t]here is no evidence in this record, would present an issue to the jury upon which they would simply have to speculate or guess.

Thus, the district court's decision to grant the plaintiff's motion for a directed verdict on the probable cause issue turned not upon an assessment of the facts available to the officer at the time of the arrest and the reasonable interpretation an officer of ordinary caution might place upon them, but upon the conclusion that the defendant lacked probable cause to make the arrest because he failed to prove that there is a Nashville ordinance on the subject of traffic signal control devices, whose command Evans cut across private property to avoid. The district court's reading of the cutting across private property ordinance as having a cross-reference that required proof that Nashville had an ordinance providing that a traffic control signal light is a regulation and that a red light requires traffic to stop and, apparently, authorizing the erection of a traffic control light signal at the corner of Broadmoor and Dickerson was, to say the least, a hypertechnical interpretation of the ordinance, and one that misdirected the court's focus of inquiry. The district court read the ordinance as though the issue had been the sufficiency of proof that Evans had violated a Nashville traffic control signal ordinance. The issue, however, was simply whether Officer Detlefsen, at the time he arrested Evans, had probable cause to conclude that the Nashville ordinance relating to cutting across private property to avoid a traffic regulation had been violated. The crucial question was "whether the facts available to the officer [ ] at the moment of the arrest would warrant a man of reasonable caution in the belief that an offense had been committed." *Beck v. Ohio*, 379 U.S. at 96, 85 S.Ct. at 228. There was no question in the case whether there was a traffic light at the corner of Broadmoor and Dickerson. (Although, during argument on the directed verdict motion, the court asked: "How do we know the traffic light is lawfully erected? What authority ... who decides where traffic lights are established?").

■ If Detlefsen had sought to prosecute Evans for a traffic violation, the court would have been correct in requiring proof of the terms of the charged ordinance. But here there was no ordinance violation

being prosecuted, no question whether Evans drove across private property, and no question whether there was a traffic regulation device, a "red light," at Broadmoor and Dickerson. There was ample evidence in the record on all of those points and no issue was made of any of them at the trial. The entire focus of the inquiry before the court on the directed verdict motion should have been whether there were sufficient facts available to Detlefsen to justify his conclusion that Evans had driven through the bank parking lot to avoid the traffic light. On this, the evidence was in conflict. Because Evans never mentioned to Detlefsen, on May 3, the planned visit to the bank, the one issue for the jury would have been whether it was objectively reasonable for Detlefsen to conclude that Evans had gone through the bank parking lot to avoid the traffic light, particularly when Evans' own words ("you're blocking traffic") suggested he had gone through the lot to avoid the traffic jam caused by Detlefsen's patrol car, and not for the purpose of entering the bank as he later stated. Evans concededly could have circumvented the blockage by merging into the left lane on Broadmoor and going through the intersection and the traffic light. Consequently, whether Evans, who incontrovertibly drove across the private property, did so to avoid the traffic light, was a debatable point. Instead of letting the jury ponder this question, however, the district court decided that, as a matter of law, there was nothing for the jury to decide.

It was the district court's view that a "reasonably competent police officer," with the "facts and circumstances within the defendant's knowledge as reflected in the evidence," could not have believed Evans had committed an offense. The reason for this, the court reasoned, is that even though Detlefsen knew it was illegal to cut through private property to avoid a traffic regulation, and even though there were facts from which Detlefsen could have surmised that Evans drove through the parking lot to avoid the traffic light, Detlefsen failed to prove that there is a traffic regulation or ordinance in Nashville requiring obedience to traffic signals. In the ab-

sence of any clue as to whether Officer Detlefsen knew that Nashville law requires obedience to traffic lights, the jury would, in the court's words, "simply have to speculate or guess" about whether Detlefsen had probable cause to believe an offense had been committed.

We think the district court erred in failing to limit its ruling to a determination whether the facts and circumstances known to the defendant at the moment of the arrest would reasonably have been "construed by those versed in the field of law enforcement" as pointing to the conclusion that the plaintiff had cut across the bank parking lot to avoid the traffic signal at Broadmoor and Dickerson.

Since our disagreement with the district court's ruling on the probable cause aspect of plaintiff's directed verdict motion rests upon our conclusion that the court failed to consider the correct criteria, we could order the matter remanded to the district court for reconsideration of the issue. We think, however, that a wiser utilization of judicial resources and appropriate concern for the burdens upon the parties if the issue were remanded for redetermination suggest that we decide whether Evans was entitled to a directed verdict on the probable cause issue, particularly since we have the entire record of the lower court proceedings before us.

Careful consideration of the record evidence of the facts available to Officer Detlefsen at the time of the arrest, as we have detailed them, "weighed not in terms of library analysis by scholars but as understood by those versed in the field of law enforcement," *Cortez*, 449 U.S. at 418, 101 S.Ct. at 695, and tested against the proper standard for deciding a directed verdict motion, does not warrant the conclusion that all reasonable minds must agree that Detlefsen was without probable cause to arrest Evans. There was, at the very least, sufficient evidence in conflict on the point to warrant submitting the issue to the jury.

We must, therefore, set aside the jury's damage award on the federal constitutional claims, and the pendant state false arrest

and malicious prosecution claims, since the district court's ruling directed verdicts of liability on those claims.

## IV.

### *Outrageous Conduct and Invasion of Privacy*

Motions for directed verdicts were made by both sides at the close of the case on the outrageous conduct and invasion of privacy claims. The motions were denied and those claims were submitted to the jury. As we have indicated, verdicts of $3,000 on each of those claims were returned.

Defendant now appeals the denial of his directed verdict and judgment notwithstanding the verdict motions, claiming that there was insufficient evidence of outrageous conduct to support the jury's verdict, and that no invasion of privacy could have taken place since the asserted "invasion" occurred in a public place. We address those arguments seriatim.

### A.

### *Outrageous Conduct*

Defendant argues that evidence of his conduct, even when assessed in the light most favorable to the plaintiff, was simply not outrageous enough to fit the definition of the tort of outrageous conduct under Tennessee law. That definition, as articulated by the Tennessee Supreme Court, is that the conduct must be

[s]o outrageous in character, and so extreme in degree as to be beyond the pale of decency, and to be regarded as atrocious and utterly intolerable in a civilized society ... [and to be actionable] must result in serious mental injury.

*Swallows v. Western Electric Co.,* 543 S.W.2d 581, 582 (Tenn.1976).

In *Moorhead v. J.C. Penney Co., Inc.,* 555 S.W.2d 713, 718 (Tenn.1977), the court observed that whether conduct is sufficiently outrageous to be actionable in tort is ordinarily a question for the jury:

The standards here applicable, i.e., "extreme and outrageous," and "not tolerable in civilized society," are, like negli-

gence, and other variable standards which are based upon the common sense of the community, primarily for application by the jury.

(Quoting *Medlin v. Allied Investment Co.,* 398 S.W.2d 270 (Tenn.1966)).

All of that notwithstanding, we test the correctness of the court's denial of the defendant's directed verdict and j.n.o.v. motions according to the standard defined by the Tennessee courts as discussed earlier with reference to the probable cause issue. To repeat, that standard is that "[a] verdict should not be directed during, or after, trial except where a reasonable mind could draw but one conclusion," *Arms,* 731 F.2d at 1248. That single available reasonable conclusion, according to defendant, is that the conduct of Officer Detlefsen, as described by the plaintiff and his witnesses, is not, as a matter of law, sufficiently outrageous to be actionable under Tennessee law. We disagree.

█ Evans' testimony, and that of his witnesses, viewed in the light most favorable to the plaintiff, if believed, paint a picture of utterly intolerable conduct by Officer Detlefsen toward Evans that included personal vindictiveness, threats, intimidation, and verbal and physical abuse of the kind that no citizen in a civilized society charged with a minor traffic offense should have to suffer, particularly at the hands of a public servant. While we are neither prepared nor authorized to say whether the evidence of Officer Detlefsen's conduct amounted to the tort of outrageous conduct, we are also unable to say that no reasonable juror would be justified in concluding that it was. Although we are troubled by the unintended but implicit message that may have been given the jury about the legal "outrageousness" of Officer Detlefsen's conduct, when the trial court directed the jury to find him liable for violating the plaintiff's federal constitutional rights and committing the torts of malicious prosecution and assault and battery, we cannot say, with any degree of reasonable certainty, that the court's probable cause determination necessarily, or even probably, infected the jury's outrageous

conduct and invasion of privacy verdicts. After most careful consideration of the testimony and the law of outrageous conduct as recognized in Tennessee, we are satisfied that the evidence of Detlefsen's abusive behavior towards Evans does not lead to the inescapable conclusion that no reasonable juror could find it *tortiously* outrageous within the meaning of that concept as defined by the Tennessee authorities cited. The issue was properly submitted to the jury.

## B.

### *Invasion of Privacy*

■ Defendant claims to have been entitled to a directed verdict and judgment notwithstanding the verdict on the plaintiff's invasion of privacy claim. It was pointed out in *Beard v. Akzona, Inc.*, 517 F.Supp. 128 (E.D.Tenn.1981), that the tort of invasion of privacy has been recognized by the Tennessee courts, *see Martin v. Senators, Inc.*, 220 Tenn. 465, 418 S.W.2d 660, 662–63 (1967); *Langford v. Vanderbilt Univ.*, 199 Tenn. 389, 287 S.W.2d 32 (1956), and that "intrusion," which is invading one's physical solitude or seclusion, is one form of common law invasion of privacy. In the absence of Tennessee cases explicitly defining this form of invasion of privacy, we turn, as did the *Beard* Court, to the Restatement (Second) of Torts § 652B, for a definition. That section provides:

> One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person.

*See Martin*, 418 S.W.2d at 663; *Beard*, 517 F.Supp. at 131.

Defendant makes a brief and unelaborated argument that because the asserted invasion occurred in a "public restaurant under the circumstances here," there could have been no intrusion into Evans' "solitude or seclusion," as required under the facts of this case, for the tort of invasion of privacy.

The short answer to the defendant's argument is that the privacy which is invaded has to do with the type of interest involved and not the place where the invasion occurs. *See Galella v. Onassis*, 487 F.2d 986, 994–95 (2d Cir.1972), in which the defendant was found guilty of invasion of privacy although many of the intrusive acts took place in public places and on public streets. Although the place of the occurrence is relevant to a determination of the sufficiency of the evidence of intrusiveness, it is not determinative of whether an intrusion into one's "solitude and seclusion" has occurred. Thus, the defendant's "impossibility as a matter of law" argument is not well-taken.

■ But, in all events, the jury's $3,000 damage award for invasion of privacy must be vacated because we are required to set aside the district court's determination that the defendant had no probable cause to arrest Evans. If the arrest was lawful in the sense that it was supported by probable cause, there can have been no invasion of privacy in effecting it. *See Simons v. Montgomery County Police Officers*, 762 F.2d 30, 33 (4th Cir.1985). In the event of a retrial, whether the arrest was lawful, that is, supported by probable cause, will be a preliminary question of fact for the jury before it reaches, if it does, the invasion of privacy claim.

## V.

### *Attorney Fees*

The defendant challenges on appeal the criteria considered by the district court in awarding attorney fees to the plaintiff. We decline to consider those arguments because we are required to set aside the award of attorney fees in light of our disposition of the probable cause issue and the verdicts flowing therefrom. The matter of appropriate attorney fees must be reconsidered by the district court if, after remand, the plaintiff prevails on the constitutional claims under § 1983.

## VI.

The judgment for the plaintiff on the federal constitutional claims and the false

arrest, malicious prosecution, and invasion of privacy pendant state claims is VACATED. The judgment on the jury verdict in favor of the plaintiff on the outrageous conduct claim is AFFIRMED. (No appeal has been taken from the assault and battery verdicts.) The case is REMANDED to the district court for disposition not inconsistent with this opinion, including a redetermination of the attorney fee's award.