920 F.2d 933
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Teresa R. RODRIGUEZ, Plaintiff-Appellant, Cross-Appellee,
v.
FRANKENMUTH INSURANCE COMPANY, Defendant-Appellee, Cross-Appellant.
 Nos. 89-3750, 89-3777.
 United States Court of Appeals, Sixth Circuit.
 Dec. 12, 1990.
 
 Before KRUPANSKY and MILBURN, Circuit Judges, and JOHN W. PECK, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Plaintiff-appellant/cross-appellee Teresa R. Rodriguez appeals the district court's judgment notwithstanding the verdict ("JNOV") in favor of defendant-appellee/cross-appellant Frankenmuth Insurance Company ("Frankenmuth") in this civil diversity action brought to recover on an insurance contract. Frankenmuth's cross-appeal essentially counters the plaintiff's arguments, asserts alternative grounds for upholding the verdict, and argues that the trial court should be ordered to rule on its motion for a new trial. For the reasons that follow, we reverse.
 
 I.
 A.
 
 2
 This litigation arises out of an automobile accident in Defiance, Ohio, on December 21, 1984. Plaintiff originally filed the action in state court, and it was removed to federal court on petition of Frankenmuth. The case was tried to a jury beginning February 27, 1989, before a magistrate upon the consent of the parties.
 
 
 3
 At the close of plaintiff's case, defendant filed a written motion for directed verdict. The court ruled on a portion of that motion and took the remainder under advisement. The motion was not renewed immediately after the last defense witness; however, it was renewed after closing arguments and before submission of the case to the jury. The magistrate acknowledged that, by rushing, he had prevented defense counsel from formally resting his case and ruled that the motion was "deemed made, heard and submitted and taken under advisement."
 
 
 4
 The jury returned a verdict for Rodriguez awarding, (1) reasonable and necessary medical expenses in the amount of $7,674.52, (2) lost income in the amount of $18,134, and (3) future lost income in the amount of $4,620. On March 2, 1989, the court entered judgment on the verdict. On March 13, 1989, the trial court ordered that the judgment of March 2, 1989, be vacated as "filed improperly prior to decision on pending motions," and further ordered entry of a judgment reducing the verdict by $12,500. Judgment was entered on March 13, 1989, reflecting a total award of $17,928.52. This reduction of the judgment was, according to the district court, "upon concurrence of the parties" and is not being challenged in this appeal.
 
 
 5
 On March 23, 1989, Frankenmuth filed separate motions for JNOV and a new trial. The magistrate granted JNOV in favor of Frankenmuth on July 17, 1989. On August 14, 1989, plaintiff filed notice of appeal to this court (No. 89-3750), and on August 24, 1989, Frankenmuth filed notice that it was cross-appealing from the judgment entered March 2, 1989 (No. 89-3777).
 
 B.
 
 6
 The accident which led to this litigation happened when plaintiff's automobile, which she was driving, was struck from the rear by a pickup truck. When plaintiff was unable to recover what she believed was necessary to make her whole from the driver of the pickup, she demanded payment from Frankenmuth, her insurer, under a provision of her policy which covered underinsured motorists. At trial, the principal issue for the jury was the amount of damages directly and proximately caused by the collision as the parties stipulated that the other driver was negligent and that his negligence was a direct and proximate cause of the collision.
 
 
 7
 Plaintiff testified that at the time of the collision, her "head just whipped back and forth." Plaintiff was treated at a local hospital emergency room and released with instructions to see a doctor if her pain continued. When her pain did continue, she saw Dr. Busteed. Dr. Busteed prescribed hot showers, hot packs, pain medication and physical therapy. Plaintiff also began seeing a chiropractor and Dr. Kachmann, a neurosurgeon, at the recommendation of Dr. Busteed.
 
 
 8
 At the time of the accident, plaintiff worked for Sauder Woodworking where she had been employed since 1977. Her job required repetitious bending and twisting of her upper body as did nearly all jobs at the plant. She was also required to periodically push heavy wood pallets along sets of rollers. Plaintiff returned to work four months after the accident but was troubled by pain.
 
 
 9
 In consultation with Dr. Busteed and Dr. Kachmann, as well as Sauder's personnel manager, plaintiff decided to quit work at Sauder's and seek other employment. At the time of the accident, plaintiff was earning approximately $8.80 per hour. At the time she left employment with Sauder, her hourly rate was $9.60 per hour. After leaving Sauder, plaintiff secured entry level work as a launderer earning $3.50 per hour.
 
 
 10
 Dr. Kachmann testified on behalf of Rodriguez by way of a video deposition. Dr. Kachmann testified that he initially saw Rodriguez on February 6, 1985. At this time Dr. Kachmann took her history including how the accident happened, what she experienced at the time and the course of treatment she had received. Dr. Kachmann's impression was residuals of a flexion/extension injury of the cervical and lumbar spine, post-traumatic occipital neuralgia and post-traumatic anxiety. Dr. Kachmann ordered x-rays and recommended therapy, exercise and chiropractic treatments. On subsequent visits of March 30, 1985; June 12, 1985; February 5, 1986; July 23, 1986; April 29, 1987; December 9, 1987; and February 14, 1989, Dr. Kachmann's findings were essentially the same as in the initial examination.
 
 
 11
 Dr. Kachmann opined that plaintiff's "head whipped back and forth from the rear-end collision tearing the muscles and ligaments." J.A. 134. Dr. Kachmann also used an anatomical representation to explain how a whipping motion from a rear-end collision could be expected to tear muscles and ligaments with resultant back pain and muscle spasm.
 
 
 12
 Dr. Kachmann also testified that he believed plaintiff's condition was permanent because it had lasted over two years. When asked whether, to a reasonable medical certainty, the bills incurred by plaintiff were reasonable and necessary care for the injury, Dr. Kachmann stated, "I have reviewed the bills themselves and combining them with the summary [prepared by the plaintiff] I feel that these are reasonable charges and bills." J.A. 140. Dr. Kachmann also stated, "It is my opinion that this [four-month absence] is an average sick leave for this type of injury." J.A. 141. When asked whether plaintiff's symptoms were causally related to the collision of December 21, 1984, Dr. Kachmann stated, "It is my opinion that her present symptoms and findings are related to the accident she was involved in." J.A. 143.
 
 
 13
 Under cross-examination, Dr. Kachmann admitted that he had not personally reviewed the office records of plaintiff's treatment by chiropractors Targonski and Gilson. He further admitted that he could not recall any specific correspondence with them regarding the care and treatment of Rodriguez. However, Dr. Kachmann explained that he spoke to Rodriquez regarding her treatments from time to time and knew from past dealings with Targonski and Gilson that they provided standard chiropractic care to his patients.
 
 
 14
 Before Dr. Kachmann's deposition was played to the jury, the court held a hearing regarding objections made during the deposition. The court overruled objections that Dr. Kachmann's testimony was inadmissible on the issue of causation and that Dr. Kachmann had no personal knowledge from which to state an opinion whether the medical bills were reasonable and necessary.
 
 
 15
 Frankenmuth presented the testimony of two medical experts to the effect that plaintiff had no injury which would cause the pain of which she complained. One expert characterized the chiropractic bills as "wildly excessive," and the other testified that the 189 chiropractic manipulation treatments were not medically necessary for the treatment of the claimed injuries. Both of Frankenmuth's experts had personally examined Rodriguez and had reviewed her medical records.
 
 
 16
 The principal issues raised in this appeal are: (1) whether JNOV was justified by failure of the plaintiff to prove that her injuries were the direct and proximate result of the accident; (2) whether JNOV was justified as to the medical expense portion of plaintiff's claim; (3) whether JNOV was justified on plaintiff's claims of past and future lost income; (4) whether the trial court erred in allowing the testimony of Dr. Kachmann relating to proximate cause, loss of income, and medical expense, over Frankenmuth's objections; (5) whether the trial court erred in failing to grant Frankenmuth's motion for a directed verdict at the close of plaintiff's case; (6) whether the trial court abused its discretion in failing to issue a special jury instruction regarding the inference to be drawn from plaintiff's failure to call as witnesses some of her medical providers; and (7) alternatively, whether the case should be remanded to allow the district court to rule on Frankenmuth's motion for a new trial.
 
 II.
 A. Procedural defects
 
 17
 Citing Neeley v. Martin K. Eby Construction Co., 386 U.S. 317 (1967), plaintiff begins her brief by arguing that a JNOV should not have been granted in this case because defendant's motion did not strictly comply with the procedural requirements for a JNOV. Neeley is not controlling under the facts of this case because the procedural requirements with which the Neeley Court expected strict compliance are designed to protect the verdict winner against losing his verdict at the court of appeals level.
 
 
 18
 We find no indication that Rodriguez was prejudiced by Frankenmuth's erroneous reference to Federal Rule of Civil Procedure 59 (pertaining to new trials or amendment of judgments) instead of Rule 50 (pertaining to directed verdict and JNOV) in its motion for JNOV. Furthermore, Frankenmuth's renewal of its motion for directed verdict before submission of the case to the jury was not untimely even though it came after closing arguments. See Martin v. Erie-Lackawanna R.R., 388 F.2d 802, 804-05 (6th Cir.1968). Thus, we find no procedural irregularities which prevent us from reaching the merits of this case.
 
 B. Proximate cause
 
 19
 The trial court granted JNOV on the issue of proximate cause because it concluded that the testimony of plaintiff's medical expert did not show that her injuries were a direct and proximate result of the automobile accident. Under Ohio law, which we are bound to follow in reviewing a directed verdict or JNOV in an Ohio diversity case, Evans v. Detlefsen, 857 F.2d 330, 334 (6th Cir.1988); Rhea v. Massey-Ferguson, Inc., 767 F.2d 266, 269 (6th Cir.1985) (per curiam),
 
 
 20
 [t]he standard for granting a motion for j.n.o.v. is the same as that necessary to sustain a motion for a directed verdict....
 
 
 21
 ... The evidence adduced at trial and the facts established by admissions in the pleadings and in the record must be construed most strongly in favor of the party against whom the motion is made, and, where there is substantial evidence to support his side of the case, upon which reasonable minds may reach different conclusions, the motion must be denied. Neither the weight of the evidence nor the credibility of the witnesses is for the court's determination in ruling upon either of the above motions.
 
 
 22
 Nickell v. Gonzalez, 17 Ohio St.3d 136, ----, 477 N.E.2d 1145, 1147 (1985) (quoting Posin v. A.B.C. Motor Court Hotel, 45 Ohio St.2d 271, 275, 344 N.E.2d 334 (1976)). Our review follows the same standard as the trial court. Evans, 857 F.2d at 334.
 
 
 23
 Except where questions of cause and effect are matters of common knowledge, a causal connection between an injury and a subsequent disability must be established by the opinion of a medical expert. Darnell v. Eastman, 23 Ohio St.2d 13, ----, 261 N.E.2d 114, 116 (1970). Back and spinal injury cases fall within this realm. Pappas v. Cleveland Elec. Illum. Co., No. 9-227, slip op. at ---- (Ohio Ct.App. Dec. 9, 1983).
 
 
 24
 The trial court apparently accepted Frankenmuth's arguments that the words "direct" and "proximate" are words of art fundamental to the establishment of the plaintiff's case. It is true that a plaintiff must show that it is more probable than not that the defendant's actions directly and proximately caused the injury complained of. See, e.g., Cooper v. Sisters of Charity, 27 Ohio St.2d 242, ----, 272 N.E.2d 97, 102-03 (1971). "However, there is no necessity for rote incantation with concomitant response in order for a party to establish a causal connection between an injury and physical disability through medical evidence." Ditmer v. Ulrich, No. CA 10829, slip op. at ---- (Ohio Ct.App. Nov. 4, 1988); see Swanton v. Stringer, 42 Ohio St.2d 356, ----, 328 N.E.2d 794, 798 (1975) (testimony that defendant's actions were "the straw that broke the camel's back" was sufficient although not "couched in legally precise language"); Pappas, slip op. at ---- (probable connection, probably related, etc.). We must look to the whole of the expert's testimony rather than the answer to one question to see if the expert testified to facts from which the jury could find causation. Wamsley v. Chrysler Corp., No. WD-83-71, slip op. at ---- (Ohio Ct.App. March 9, 1984).
 
 
 25
 In this case Dr. Kachmann had seen Rodriguez on eight different occasions. He had taken her history including what she experienced at the time of the accident. The doctor testified that he believed plaintiff's head whipped back and forth from the rear-end collision tearing muscles and ligaments. He testified that he believed this injury was permanent. He further testified that plaintiff's present symptoms and findings were related to the accident. Thus, although Dr. Kachmann did not use legally precise language, the jury could have found from the facts to which he testified that the accident was a direct and proximate cause of the injury. Consequently, we hold that the magistrate erred in granting JNOV in favor of Frankenmuth on the issue of proximate cause.
 
 C. Medical expense
 
 26
 The magistrate held that even if proximate cause were shown, there was nonetheless a failure of proof as to the damages resulting. Citing DeTunno v. Shull, 166 Ohio St. 365, 143 N.E.2d 301 (1957), the magistrate found plaintiff's proof of medical expenses insufficient because her medical expert did not specifically testify that the treatment was necessary for her injury.
 
 
 27
 The magistrate should have found Wagner v. McDaniels, 9 Ohio St.3d 184, 459 N.E.2d 561 (1984), which modified DeTunno, to be the controlling authority. The syllabus prepared by the court in Wagner stated the holding as follows: "Proof of the amount paid or the amount of the bill rendered and of the nature of the services performed constitutes prima facie evidence of the necessity and reasonableness of the charges for medical and hospital services." 9 Ohio St.3d at ----, 459 N.E.2d at 562. The Supreme Court syllabus is controlling authority. Ohio Supreme Court Rules for the Reporting of Opinions, 1(B). Accordingly, lower appellate courts have held that expert testimony as to the necessity of medical expense is not mandatory. See Ronk v. Hall, No. 87-CA-9, slip op. at ---- (Ohio Ct.App. Dec. 31, 1987). Accord Ditmer v. Ulrich, slip op. at ----; Shackelford v. Kovacik, No. 1244, slip op. at ---- (Ohio Ct.App. Feb. 28, 1986).
 
 
 28
 The magistrate distinguished Wagner on two grounds, neither of which we find persuasive. The first distinction cited by the magistrate was that treating physicians testified in Wagner whereas Kachmann was not a treating physician. Since Dr. Kachmann had examined plaintiff on eight different occasions and made recommendations as to treatment, we are hesitant to say that Dr. Kachmann was not a treating physician. Even if Kachmann was not a treating physician, the fact that treating physicians testified in Wagner is not a weighty distinction since they did not testify as to necessity. See 9 Ohio St.3d at ----, 459 N.E.2d at 563.
 
 
 29
 The second distinction cited was that in Wagner there was no contradictory evidence as to the necessity of the services rendered whereas in this case there was testimony that the chiropractic treatments were not medically necessary. We note that Frankenmuth has not challenged the reasonableness of the bills, only the necessity. Appellee's Brief at 46. We perceive the testimony of the defendant's experts as more directly challenging the overall reasonableness of the chiropractic bills rather than the necessity of any particular treatment. In this case, as in Wagner, there was considerable evidence relating to the symptoms. Wagner stated that the necessity of treatment could be inferred from the extensive testimony relating to the symptoms. 9 Ohio St.3d at ----, 459 N.E.2d at 563. Dr. Kachmann testified that in this case he recommended chiropractic treatments for those symptoms. From this testimony, the jury could have inferred that the treatments were necessary and rejected the contrary testimony. See Wood v. Elzoheary, 11 Ohio App.3d 27, ----, 462 N.E.2d 1243, 1245-46 (1983).
 
 
 30
 In a related argument, Frankenmuth asserts that since Dr. Kachmann did not have specific correspondence with plaintiff's treating doctors, there was not sufficient foundation for allowing his testimony regarding the reasonableness and necessity of the treatments provided. However, Kachmann had the benefit of speaking to Rodriguez about the treatment she was receiving, and he knew from past dealings with the chiropractors that they provided standard chiropractic care. Also, the medical bills were admitted into evidence, and Dr. Kachmann specifically testified that he had examined the medical bills and found the charges to be reasonable.
 
 
 31
 We do not reverse a trial judge's evidentiary rulings absent a clear showing of abuse of discretion. See, e.g., Schrand v. Federal Pac. Elec. Co., 851 F.2d 152, 156-57 (6th Cir.1988). Under the liberal admissibility provisions of Rules 702 and 703 of the Federal Rules of Evidence, we find no abuse of discretion in admitting Dr. Kachmann's testimony. Thus, we are not swayed from our holding that there was sufficient evidence for the jury to infer that plaintiff's medical expenses were necessary.
 
 D. Lost wages and lost earning power
 
 32
 In regard to lost earnings, the trial court stated:
 
 
 33
 Absent a showing of probable cause between the accident and the injuries, on the one hand, and a showing of reasonableness and necessity for the treatment, on the other, the plaintiff failed to meet her burden of proving that the time she lost from work and would be losing from work resulted from injuries that, in turn, were caused by the accident.
 
 
 34
 Given our earlier holdings that it was error to grant JNOV on the issues of probable cause and the necessity of medical treatment, the trial court's ruling is left without support.
 
 
 35
 Frankenmuth advances various arguments seeking to uphold the ruling below. Frankenmuth argues that justification for plaintiff's four-month absence from work was never made clear. However, Rodriguez testified that Dr. Busteed told her not to work, and Dr. Kachmann opined that plaintiff's four-month absence was "an average sick leave for this type of injury." J.A. 141.
 
 
 36
 Frankenmuth also argues that in regard to the alleged lost income between the time plaintiff left her employment with Sauder Woodworking and the time of trial, plaintiff did not establish that her alleged injuries disabled her from performing her job. Dr. Kachmann testified that he was aware of the nature of the plaintiff's work at Sauder and that he did not believe she could tolerate that work. Plaintiff testified concerning the difficulties she experienced upon returning to work and further testified that in consultation with Dr. Kachmann, Dr. Busteed and her personnel manager at Sauder, she made the decision to quit. This was enough evidence to support the jury's inference that the injuries prevented the plaintiff from performing her job at Sauder's.
 
 
 37
 Dr. Kachmann's testimony that the injury was permanent, and his testimony indicating that the injury prevented plaintiff from performing her job at Sauder was also relevant to lost earning power. This testimony, when supplemented by evidence of plaintiff's past wages and the testimony of a vocational counselor to the effect that plaintiff's education and past work experience reduced her, upon leaving her past employer, to entry level work at the minimum wage, was enough to "permit the jury to arrive at a pecuniary value of the loss" with reasonable probability. See Powell v. Montgomery, 27 Ohio App.2d 112, ----, 272 N.E.2d 906, 913 (1971).
 
 E. Frankenmuth's additional arguments
 
 38
 Before considering Frankenmuth's additional arguments, we note that Frankenmuth's notice of appeal purports to appeal from the judgment entered March 2, 1989. That judgment was vacated upon concurrence of the parties in an order entered March 13, 1989. Therefore, Frankenmuth attempts to appeal from a nonexistent judgment. However, Frankenmuth's error does not prevent us from considering the merits of its arguments, as a party may advance on appeal alternative grounds for upholding the judgment below. Russ' Kwik Car Wash, Inc. v. Marathon Petroleum Co., 772 F.2d 214, 216 (6th Cir.1985) (per curiam). Moreover, a party who asks for both JNOV and a new trial below may argue on appeal the propriety of a new trial. Fed.R.Civ.P. 50(c) advisory committee's notes (citing Patterson v. Pennsylvania R.R., 238 F.2d 645, 650 (6th Cir.1956)).
 
 
 39
 Frankenmuth's arguments that the magistrate erred in overruling objections to the medical testimony concerning proximate causation, medical expense and loss of income merely incorporate the arguments previously addressed. For reasons that we have already stated, we find no abuse of discretion in admitting the testimony. Similarly, Frankenmuth's argument that the trial court erred in failing to grant a directed verdict at the close of plaintiff's case adds nothing new, and we reject this argument for reasons we have stated in discussing the JNOV.
 
 
 40
 Frankenmuth next argues that the trial court abused its discretion in failing to issue a special jury instruction to correct prejudice which flowed from plaintiff's closing argument. Plaintiff argued that no adverse inference should be drawn from her failure to call treating medical personnel as witnesses because the defendant could have subpoenaed them as witnesses. The trial court overruled Frankenmuth's objection to the argument but gave the following instruction in its charge to the jury:
 
 
 41
 When it appears that a party knows of the existence of a material witness and such witness is within the control of the party whose interest would naturally be to produce him and without satisfactory explanation he fails to do so, you may draw an inference that the testimony would not have been favorable ... to the party.
 
 
 42
 Cf. Silveous v. Rensch, 20 Ohio St.2d 82, ----, 253 N.E.2d 758, 759 (1969).
 
 
 43
 We will not reverse a trial court on claimed error in instructing the jury unless there is substantial error resulting in prejudice. See Disner v. Westinghouse Elec. Corp., 726 F.2d 1106, 1109 (6th Cir.1984). The trial court found that the plaintiff's medical experts were equally accessible as witnesses to both parties. Since "[n]o inference may be drawn by a jury because a party fails to call as a witness one who is equally available to the opposing party," State ex. rel Raydel v. Raible, 117 N.E.2d 480, ---- (Ohio Ct.App.1954), we are persuaded that any prejudice from the trial court's instruction was to the plaintiff. Thus, we reject Frankenmuth's argument for a new trial on the basis of jury instructions.
 
 
 44
 Finally, Frankenmuth argues that the trial court should be required to rule on its motion for a new trial which was filed at the same time as its motion for JNOV. Federal Rule of Civil Procedure 50(c) provides that if the trial court grants a JNOV, then "the court shall also rule on the motion for a new trial, if any, by determining whether it should be granted if the judgment is thereafter vacated or reversed...."
 
 
 45
 It is clear that the trial court should have ruled on the motion for a new trial; however, the motion for a new trial made the same arguments as the motion for JNOV, and in fact, incorporated the arguments made in the motion for JNOV by reference. By rejecting Frankenmuth's arguments, this opinion obviates the need for the trial court to consider the motion for a new trial. See Neeley v. Martin K. Eby Constr. Co., 386 U.S. 317, 328 (1967) (indicating that an appellate court can determine the necessity of a remand where the plaintiff loses his jury verdict by a JNOV). Consequently, we hold that Frankenmuth has presented no grounds for a new trial and decline Frankenmuth's invitation to remand the case to allow the trial court to consider granting a new trial.
 
 III.
 
 46
 Accordingly, for the reasons stated, the judgment of the district court entered July 17, 1989, granting JNOV for the defendant is REVERSED, and the case is REMANDED with instructions to reinstate the judgment entered March 13, 1989.