**Dewey LINEBERRY, et al., Plaintiff**

v.

**STATE FARM FIRE & CASUALTY CO., Defendant.**

No. 3:94–0295.

United States District Court,
M.D. Tennessee,
Nashville Division.

April 4, 1995.

**1096**

William Edward Farmer, Lebanon, TN, Susan Kerr Lee, John P. Konvalinka, Grant, Konvalinka & Grubbs, P.C., Chattanooga, TN, Michael E. Galligan, Galligan & Newman, McMinnville, TN, for Dewey Lineberry.

John W. Wagster, Hollins, Wagster & Yarbrough, Nashville, TN, for State Farm Fire and Cas. Ins. Co.

## MEMORANDUM

ECHOLS, District Judge.

Presently pending before this Court are Plaintiff Lineberry's Motion for Summary Judgment, Plaintiff Robinson's Motion for Summary Judgment, and Defendant State Farm's Motion for Summary Judgment. For the reasons outlined herein, Plaintiff Lineberry's motion is GRANTED, Plaintiff Robinson's motion is GRANTED, and Defendant State Farm's motion is DENIED.

Plaintiffs, Dewey Lineberry and Bill Robinson, seek a declaratory judgment requiring State Farm Fire & Casualty Co. ("State Farm") to defend and indemnify them against actions in state court pursuant to personal liability policies of insurance issued by State Farm to Lineberry and Robinson. Lineberry and Robinson originally filed these actions in the Circuit Court of Wilson County, Tennessee, but State Farm subsequently removed them to this Court. Upon their removal, the two cases were consolidated, as the underlying facts and insurance policies are identical.

Plaintiffs are currently defending four separate actions brought in the Circuit Court of Wilson County, Tennessee by four women. The allegations of all four suits are essentially the same. Lineberry apparently had sexual relationships with the four women over the period of time stated in the lawsuits. In the course of building himself a new office building, Lineberry enlisted the help of Robinson to construct a "secret" viewing room adjoining the recreation room and the restroom of Lineberry's personal office. Two-way mirrors were constructed into the walls of the recreation room and restroom so that anyone in the viewing room could look through the mirrors and observe occupants of the recreation room and bathroom without the occupants' knowledge. The occupants of the recreation room and restroom could see only their own reflections in the mirrors. Lineberry and Robinson set up a video camera in the viewing room so that the persons and activities in the recreation room and restroom could secretly be filmed through the two-way mirrors.

On occasions Lineberry brought the unsuspecting females to his office where Robinson, who was hiding in the viewing room, secretly videotaped their sexual activities. Lineberry contends this scheme was approved or suggested by his attorney as a way to preserve proof of his sexual activities in the event one of his unsuspecting female guests falsely accused him of some impropriety. He maintains that this extraordinary precaution was taken only for his own protection, and that he had no intention of disclosing the video tapes of his sexual escapades to any other person. At some later time, Lineberry and his attorney had a dispute. Subsequently, Lineberry's attorney notified the Wilson County District Attorney of Lineberry's clandestine videotaping activities. After a search warrant was obtained, Lineberry's office was searched, and the tapes were seized by local law enforcement officials. The women depicted in the videotapes were then asked to come to the Sheriff's Department, identify themselves on the videotapes, and explain their actions. All four women deny they were aware they had been filmed.

Each of the four women filed a separate lawsuit in the Circuit Court of Wilson County. The suits charge Lineberry and Robinson with outrageous conduct, intentional infliction of emotional distress, fraud or constructive fraud, misrepresentation, appropriation, and invasion of their rights to privacy. Each of the women seek recovery for humiliation, mental distress, and emotional pain

and suffering which resulted from the actions of Lineberry and Robinson.

Both Lineberry and Robinson possess personal liability umbrella insurance policies with State Farm. They contend that pursuant to the provisions of those policies, State Farm must defend and indemnify them against the claims for invasion of privacy in the four lawsuits filed in Wilson County, Tennessee.

It is undisputed that both policies contain the same language relating to a covered "loss." Pursuant to the policies, if the insureds "are legally obligated to pay damages for a loss, [State Farm] will pay [the insured's] net loss minus the retained limit." (Docket Entry No. 44, Exhibit 1 at 3.) It also is undisputed that there is no retained limit in either Lineberry's or Robinson's policy. Therefore, for any losses covered by these policies, State Farm would be liable for the entire loss, up to the policy limit.

"Loss," as defined under the terms of both policies, means "an *accident* that results in *personal injury* or property damage during the policy period." (*Id.* at 1 (emphasis added).) "Personal injury," in turn, is defined as:

   a. bodily harm, sickness, disease, shock, mental anguish or mental injury …;

   b. false arrest, false imprisonment, wrongful eviction, wrongful detention, malicious prosecution or humiliation;

   c. libel, slander, defamation of character or *invasion of rights of privacy;* and

   d. assault and battery.

(*Id.* at 2 (emphasis added).)

The policies also contain a provision which excludes coverage for intentional acts or acts which are expected. Specifically, the policies provide that State Farm:

   will not provide insurance … for personal injury or property damage:

   a. which is either expected or intended by you; or

   b. to any person or property which is the result of your willful and malicious act, no matter at whom the act was directed.

(*Id.* at 4.)

Plaintiffs contend that State Farm, having specifically insured them against losses caused by the invasion of the right to privacy, must both defend them against the claims presented in the four lawsuits and indemnify them for any damages awarded to the four women. State Farm contends it is not required to defend or indemnify against these claims because the losses were not the result of an "accident" and the claims fall within the policy's exclusion for intentional or expected acts.

Plaintiffs counter Defendant's arguments by pointing to the language in the policy which defines "personal injury" by specifically listing a number of intentional torts, including invasion of the right of privacy. In other words, the losses insured against are those resulting in personal injury, which under the policy's definition includes certain types of intentional torts. An intentional tort is a civil wrong or injury which occurs as a result of the intentional act of another person. For example, one cannot commit an act of assault and battery accidentally. Likewise, one cannot be liable for malicious prosecution without intending to prosecute the victim. Plaintiffs further contend that one cannot invade a person's privacy by accident, because invasion of the right of privacy is inherently an intentional tort. Therefore, Plaintiffs allege that State Farm insured them against damages resulting from certain specific intentional torts, namely, invasion of right of privacy. However, in a separate section of the State Farm policy, under "Exclusions," the policy excludes coverage for injuries which were "intended or expected." Plaintiffs contend these provisions result in contradictory coverage or coverage which is ambiguous or merely illusory. Plaintiffs, therefore, maintain that the policy's ambiguity should be construed against the drafter, State Farm, and in Plaintiffs' favor.

Defendant alleges that the insurance policy provisions are not contradictory and the coverage is not illusory, because an invasion of the right to privacy is not necessarily an intentional tort. If that were correct, the policy would not necessarily be ambiguous, as the policy would cover injuries resulting from unintentional invasions of the right of

privacy and would exclude those which are intentional.

Because there are no genuine disputes of material fact and the crux of the dispute is the legal interpretation of the insurance policies, the parties have agreed to have the case resolved by means of cross-motions for summary judgment. In ruling on a motion for summary judgment, this Court must construe the evidence produced in the light most favorable to the non-moving party, drawing all justifiable inferences in his or her favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986). A party may obtain summary judgment if the evidentiary material on file shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

It is well-established that an insurance policy, which is nothing more than a contract between the insurance company and the insured, should be given its plain meaning. *State Farm Mutual Auto. Ins. Co. v. Oliver*, 406 F.2d 409, 410 (6th Cir.1969); *Purdy v. Tenn. Farmers Mut. Ins. Co.*, 586 S.W.2d 128, 130 (Tenn.Ct.App.1979). However, where policy language is ambiguous, "the policy must be construed in favor of the insured and against the insurer." *Purdy*, 586 S.W.2d at 130; *Oliver*, 406 F.2d at 410; *Allstate Ins. Co. v. Watts*, 811 S.W.2d 883, 885 (Tenn.1991). Exclusionary clauses are to be strictly construed against the insurer. *Phillips v. Gov't Employees Ins. Co.*, 395 F.2d 166, 167 (6th Cir.1968); *Travelers Ins. Co. v. Aetna Casualty & Sur. Co.*, 491 S.W.2d 363, 367 (Tenn.1973).

There are four kinds of invasion of rights to privacy: (1) appropriation; (2) unreasonable intrusion; (3) public disclosure of private facts; and (4) false light publicity. Restatement (Second) of Torts § 652A (1977). Therefore, the inquiry regarding the necessary intent for invasion of the right to privacy requires that this Court examine all four forms of that tort.

■ Appropriation is committed by one who takes for his or her own use or benefit another's name or likeness without consent. *Id.* at § 652C. It is, therefore, an intentional tort, as an intentional act is required before one can be held liable for appropriation. Indeed, an action for appropriation may not stand where the defendant merely adopted a name that is the same as the plaintiff's, as "long as he does not pass himself off as the plaintiff or otherwise seek to obtain for himself the values or benefits of the plaintiff's name or identity." *Id.* at § 652C cmt. c. Likewise, the incidental use of plaintiff's name or likeness does not constitute appropriation. *Id.* at § 652C cmt. d.

■ Unreasonable intrusion is committed by "[o]ne who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns ... [where] the intrusion would be highly offensive to a reasonable person." *Id.* at § 652B. "It consists solely of an *intentional* interference with [the plaintiff's] interest in solitude or seclusion, either as to his person or as to his private affairs or concerns, of a kind that would be highly offensive to a reasonable [person]." *Id.* at § 652B cmt. a (emphasis added).

■ The tort of public disclosure of private facts is committed by "[o]ne who gives publicity to a matter concerning the private life of another ... [where] the matter publicized is of a kind that would be highly offensive to a reasonable person, and is not of legitimate concern to the public." *Id.* at § 652D. This tort is intentional, as it requires that the publisher know that: (1) the matter being revealed is of the kind that would be highly offensive to the reasonable person; and (2) that the information revealed is not of legitimate public concern.

■ The final type of invasion of the right to privacy, false light publicity, is committed by:

[o]ne who gives publicity to a matter concerning another that places the other before the public in a false light ... [where:]

(a) the false light in which the other was placed would be highly offensive to a reasonable person, and

(b) the actor had knowledge of or acted in reckless disregard as to the falsity of the

publicized matter and the false light in which the other would be placed.

*Id.* at § 652E. The requisite intent for liability under false light publicity is malice. *See New York Times Co. v. Sullivan,* 376 U.S. 254, 279–80, 84 S.Ct. 710, 726, 11 L.Ed.2d 686 (1964) (defining "actual malice" in the context of a defamation case as acting "with knowledge that [a statement] was false or with reckless disregard of whether it was false").

In support of their arguments, Plaintiffs have cited to two cases which are directly on point. In the first, the insurance policy at issue defined "bodily injury" as including "[f]alse arrest, wrongful detention or imprisonment[;] [m]alicious prosecution[;] [w]rongful entry or wrongful eviction[;] [d]iscrimination[;] [h]umiliation[;] [a]ssault and battery[;] [f]alse or improper service of process[;] [v]iolation of property rights[;] [v]iolation of civil rights[; and] [a] publication or utterance that interferes with someone else's right to an idea." *Lincoln Nat'l Health and Casualty Ins. Co. v. Brown,* 782 F.Supp. 110, 112 (M.D.Ga.1992). Plaintiff in that case was potentially subject to liability for assault and battery. Because liability for both assault and battery always requires a finding that the defendant acted intentionally, the court held that the policy's "intentional acts" exclusion rendered the policy's coverage illusory, and the plaintiff prevailed. *Id.* at 112–13.

Likewise, in a case in which the insurance policy covered injuries arising from malicious prosecution and slander, but excluded coverage for intentional acts, the policy was held to be illusory. *Davidson v. Cincinnati Ins. Co.,* 572 N.E.2d 502 (Ind.Ct.App.1991). When the plaintiff in that case was sued for malicious prosecution and slander, he sought a declaratory judgment requiring that the insurance company defend and indemnify him. *Id.* at 504. The Court found for the plaintiff, concluding that the coverage was illusory because malicious prosecution and slander are inherently intentional torts. *Id.* at 507.

In the instant case, the umbrella policy expressly covered injuries resulting from invasion of the right of privacy, an inherently intentional tort, but excluded injuries which were intended or expected. Therefore, the Court finds the coverage is illusory, and the policy is ambiguous and must be interpreted against the insurer and in favor of the insured. *Allstate Ins. Co. v. Watts,* 811 S.W.2d 883, 885 (Tenn.1991). Accordingly, State Farm must indemnify Plaintiffs for injuries (humiliation, mental distress, emotional pain and suffering) arising from Plaintiffs' alleged invasion of rights to privacy.

The Court will now turn to State Farm's duty to defend. The policies state that "[w]hen the claim or suit is covered by this policy, but not covered by any other policy[,] ... we will defend the suit against you." (Docket Entry No. 44, Exhibit 1 at 3.) It is well-established that the duty to defend the insured and the duty to indemnify against valid claims are not the same thing. *Jackson Housing Auth. v. Auto–Owners Ins. Co.,* 686 S.W.2d 917, 922 (Tenn.Ct.App.1984).

> [A]n insurance company's obligation to defend its insured is determined solely by "the allegations in the complaint or pleading asserting a claim against the insured." The obligation to defend arises whenever the complaint against the insured alleges a claim upon any ground for which there might be a recovery within the terms of a policy.... The purpose of such duty ... is for the insured to obtain protection against the expense of defending suits, whether meritorious or groundless, *within the area and scope of liability covered by the policy.*

*U.S. Fidelity & Guar. Co. v. Murray Ohio Mfg. Co.,* 693 F.Supp. 617, 622 (M.D.Tenn. 1988) (citations omitted) (quoting *Bituminous Fire and Marine Ins. Co. v. Izzy Rosen's Inc.,* 493 F.2d 257, 263 (6th Cir.1974)), *aff'd,* 875 F.2d 868 (6th Cir.1989).

Because this Court has found that the claims for injuries resulting from the alleged invasion of the right to privacy fall within the coverage of the policies, State Farm has a duty to defend against that portion of the complaints against Lineberry and Robinson.

For the foregoing reasons, Lineberry's Motion for Summary Judgment is GRANTED, Plaintiff Robinson's Motion for Summary Judgment is GRANTED, and Defendant State Farm's Motion for Summary

Judgment is DENIED. Accordingly, this case is DISMISSED.