**Linda A. SCARBOROUGH, Gracie Myrick, Charlotte Roberson, Cathy D. Walker, Tina J. Lowery, and Jo Ellen Spurgeon, Plaintiffs,**

**v.**

**BROWN GROUP, INC., d/b/a Brown Shoe Company; Billy Spellings and Nelson Siler, Defendants.**

No. 95–1150.

United States District Court,
W.D. Tennessee,
Eastern Division.

Oct. 31, 1995.

As Amended Sept. 25, 1996.

Thomas Strawn, Jr., Dyersburg, TN, for plaintiffs.

Randy Chism, Union City, TN and James N. Foster, Jr., St. Louis, MO, for defendants.

ORDER PARTIALLY GRANTING DE-
FENDANT BROWN GROUP, INC.'S
MOTION TO DISMISS, AND PAR-
TIALLY GRANTING MOTION TO
DISMISS ON BEHALF OF DEFEN-
DANTS SPELLINGS AND SILER

TODD, District Judge.

This action involves claims of sexual harassment pursuant to Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.*, and 42 U.S.C. § 1983. Plaintiffs Linda A. Scarborough, Gracie Myrick, Charlotte Roberson, Cathy D. Walker, Tina J. Lowery, and Jo Ellen Spurgeon, who are either present or former employees of Brown Group, Inc., d/b/a Brown Shoe Company in Dyer, Tennessee, filed suit against their employer, and also against Billy Spellings, a supervisor, and Nelson Siler, the general manager of the Dyer facility. Plaintiffs seek both compensatory and punitive damages, and also invoke the court's supplemental jurisdiction to hear various state law tort claims. Before the court is a motion to dismiss on behalf of Brown Group, Inc., and a motion to dismiss on behalf of Defendants Spellings and Siler. Plaintiffs have responded to the motions.

■ A motion to dismiss under Rule 12(b)(6) tests whether a claim has been adequately stated in the complaint. Rule 8(a) requires the pleader to set forth a short and plain statement of the claim showing an entitlement to relief. In evaluating a motion to dismiss under Rule 12(b)(6), all allegations in the complaint are taken as true and the complaint is construed liberally in favor of the party opposing the motion to dismiss. *Westlake v. Lucas,* 537 F.2d 857, 858 (6th Cir.1976). In appraising the sufficiency of the complaint, the accepted rule is that "all a complaint need do is afford the defendant 'fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" *Id.* (quoting *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957)). A motion to dismiss under Rule 12(b)(6) is appropriate only "if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984) (citing *Conley v. Gibson,* 355 U.S. at 45–46, 78 S.Ct.

at 101–02); *Allard v. Weitzman (In re DeLorean Motor Co.),* 991 F.2d 1236, 1240 (6th Cir.1993). A complaint should not be dismissed because it does not state all the elements giving rise to a legal basis of recovery or because plaintiff misconceived the proper theory or claim if plaintiff is entitled to relief under any theory. *Myers v. United States,* 636 F.2d 166 (6th Cir.1981); *Thomas W. Garland, Inc. v. City of St. Louis,* 596 F.2d 784 (8th Cir.1979), *cert. denied,* 444 U.S. 899, 100 S.Ct. 208, 62 L.Ed.2d 135 (1979). However, legal conclusions or unwarranted factual inferences need not be accepted as true. *Morgan v. Church's Fried Chicken,* 829 F.2d 10, 12 (6th Cir.1987).

### *Title VII Claims Against Brown Group, Inc.*

Defendant Brown Group, Inc., ("Brown") first contends that the claims of Plaintiffs Linda Scarborough, Gracie Myrick, and Jo Ellen Spurgeon must be dismissed either in whole or in part because of the failure to file timely charges of discrimination with the Equal Employment Opportunity Commission or the Tennessee Human Rights Commission.

Plaintiff Scarborough filed an administrative charge with the EEOC on March 3, 1995, alleging that she had been subjected to sexual harassment by Defendant Spellings from June, 1980, through June 20, 1994. Plaintiff Myrick also filed her charge on March 3, 1995, alleging harassment from 1970 through December 19, 1994. Defendant Brown contends that these Plaintiffs cannot recover for any incidents of harassment occurring before May 7, 1994, three hundred days prior to the filing of the administrative charges.

■ Generally, in order to recover for a discriminatory act, a plaintiff must make the act the basis of a timely administrative charge with the EEOC. *See United Air Lines v. Evans,* 431 U.S. 553, 558, 97 S.Ct. 1885, 1889, 52 L.Ed.2d 571 (1977); *Equal Employment Opportunity Comm'n v. Ford Motor Credit Co.,* 26 F.3d 44, 46 (6th Cir. 1994). Pursuant to 42 U.S.C. § 2000e–5(e)(1), a charge of discrimination in Tennes-

see must be filed within three hundred days of the alleged discriminatory act. However, there are exceptions to this general rule.

One of the exceptions to the general rule is the continuing violation doctrine. Under this doctrine, "where a plaintiff, pursuant to [Title VII], challenges not just one incident of conduct violative of the Act, but an unlawful practice that continues into the limitations period, the complaint is timely when it is filed within [300] days of the last asserted occurrence of that practice." *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 380–81, 102 S.Ct. 1114, 1125, 71 L.Ed.2d 214 (1982); *Hull v. Cuyahoga Valley Bd. of Educ.*, 926 F.2d 505, 510–11 (6th Cir.1991); *Held v. Gulf Oil Co.*, 684 F.2d 427, 430 (6th Cir.1982).

There are two categories of continuing violations. The first category arises "where there is some evidence of *present* discriminatory activity giving rise to a claim of a continuing violation." *Haithcock v. Frank*, 958 F.2d 671, 677–78 (6th Cir.1992) (quoting *Dixon v. Anderson*, 928 F.2d 212, 216–17 (6th Cir.1991)); *see also Equal Employment Opportunity Comm'n v. Penton Indus. Pub. Co.*, 851 F.2d 835, 837–38 (6th Cir.1988). The second category of continuing violation arises "where there has been a longstanding and demonstrable policy of discrimination." *Id.* The Defendant contends that the Plaintiffs' allegations fail to state a claim for either type of continuing violation.

The court agrees that Plaintiffs have failed to allege a longstanding and demonstrable policy of discrimination, as this second category of continuing violation requires that some form of discrimination be "standard operating procedure" for the employer. *Penton Indus.*, 851 F.2d at 838 (quoting *Jewett v. ITT Corp.*, 653 F.2d 89, 91–92 (3d Cir.), *cert. denied*, 454 U.S. 969, 102 S.Ct. 515, 70 L.Ed.2d 386 (1981)). However, the court finds that the Plaintiffs have successfully alleged a continuing violation of the first type, the occurrence of "present" discriminatory activity.

Contrary to Defendant's assertions, this type of continuing violation does not require an allegation that the discriminatory activity has continued into the present time. "Present" or "current" means present within the applicable limitations period. *See Haithcock*, 958 F.2d at 678; *Dixon*, 928 F.2d at 216; *Hull*, 926 F.2d at 510–11; *Penton Indus.*, 851 F.2d at 838; *Held*, 684 F.2d at 430. Thus, where there has been a continuous pattern of discriminatory acts, a Title VII claim is actionable in its entirety as long as at least one of the acts occurred within the limitations period. *Id.*

In this case, the EEOC charges[1] filed by Plaintiffs Scarborough and Myrick clearly allege a long pattern of sexual harassment by Defendant Spellings, continuing throughout their employment and into the 300-day limitations period. The harassment allegedly consisted of, *inter alia*, sexual remarks and jokes, requests for sexual favors and liaisons, and intimidation. This is not a case of "an unrelated isolated incident," as argued by the Defendant. The EEOC charges allege a continuing violation, and were timely filed. Thus, this court has jurisdiction over the Title VII claims of Plaintiffs Scarborough and Myrick in their entirety.

Plaintiff Spurgeon filed her administrative charge with the EEOC on February 23, 1995, alleging harassment by Spellings from December, 1987, through February 14, 1994. It is clear that under both the general rule of § 2000e–5(e)(1) and the continuing violation doctrine, these claims are untimely. However, the "single-filing rule" provides that in a multiple-plaintiff, non-class action suit, "if one plaintiff has filed a timely EEOC complaint as to that plaintiff's individual claim, then co-plaintiffs with individual claims arising out of similar discriminatory treatment in the same time frame need not have satisfied the filing requirement." *Equal Employment Opportunity Comm'n v. Wilson Metal Casket Co.*, 24 F.3d 836, 839–40 (6th Cir.1994) (quoting *Ezell v. Mobile Housing Bd.*, 709 F.2d 1376, 1381 (11th Cir.1983). The rationale for this rule is that it would be

---

1. The EEOC charges include the Charge Information Forms, containing the particulars of the allegations.

wasteful to require numerous employees with the same grievance to file separate, identical complaints with the EEOC. *Id.* at 840.

■■■ The harassment claims of Plaintiff Spurgeon are virtually identical to those of Plaintiffs Scarborough, Myrick, and Walker.[2] They involve a continuous pattern of harassment by Defendant Spellings, occurring within the same time frame. Therefore, her claims are substantially related to the timely filed claims, and under the "single-filing rule" Plaintiff Spurgeon need not have complied with the 300–day filing requirement.

### Title VII Claims Against Defendants Spellings and Siler

Title VII provides that "it shall be an unlawful employment practice for an employer" to discriminate on the basis of race, color, religion, sex, or national origin. 42 U.S.C. § 2000e–2. A person aggrieved by such discrimination may bring a civil action against the "employer." 42 U.S.C. § 2000e–5(b). "Employer" is defined to mean "a person engaged in an industry affecting commerce who has fifteen or more employees . . . and any agent of such person." 42 U.S.C. § 2000e(b). Defendants Spellings and Siler contend that Title VII does not allow employees or supervisors to be sued as individuals but, instead, provides a remedy only against the employer.

Several Courts of Appeals have addressed this issue, and the majority hold that a supervisor cannot be held liable individually under Title VII. In *Grant v. Lone Star Co.,* 21 F.3d 649 (5th Cir.1994), the Fifth Circuit held that Title VII does not provide for liability against individual employees who do not otherwise qualify as employers. *Id.* at 650. The Court reversed a jury verdict in favor of the plaintiff against the defendant branch manager who had participated in the sexual harassment of the plaintiff. *Id.* at 651. The court noted that Congress could have made individual employees who engage in discriminatory acts liable for damages but did not. *Id.* at 653.

Congress has proscribed conduct by 'persons' in other statutory schemes. *See* 42

U.S.C. § 1981, 1983, 1985, 1986. The absence of specific language making a non-employer individual liable for these damages, when Congress has included such language in other contexts, indicates that Congress did not intend to impose individual liability for backpay damages under title VII, unless the individual meets the statutory definition of 'employer.' In sum, there is no indication anywhere in title VII that Congress intended to impose individual liability in such a circumstance.

*Id.*

In reaching its decision, the court cited decisions from the 11th Circuit in *Busby v. City of Orlando,* 931 F.2d 764, 772 (11th Cir.1991), and the 9th Circuit in *Miller v. Maxwell's Int'l Inc.,* 991 F.2d 583, 584 (9th Cir.1993), *cert. denied,* 510 U.S. 1109, 114 S.Ct. 1049, 127 L.Ed.2d 372 (1994) that had reached the same result.

In *Busby,* the Eleventh Circuit held that individual capacity suits are not authorized under Title VII.

The relief granted under Title VII is against the *employer,* not individual employees whose actions would constitute a violation of the Act. . . . We think the proper method for a plaintiff to recover under Title VII is by suing the employer, either by naming the supervisory employees as agents of the employer or by naming the employer directly.

931 F.2d at 772.

The issue of individual liability under Title VII was discussed extensively by the Ninth Circuit in *Miller.* Because the term "employer" under Title VII is defined to include any agent of the employer, some courts have reasoned that supervisors are themselves employers for purposes of liability. 991 F.2d at 587 (citations omitted). *Miller* rejected this reasoning by stating that the purpose of the agent provision was to incorporate respondeat superior liability into the statute. *Id.*

The statutory scheme itself indicates that Congress did not intend to impose individual liability on employees. Title VII limits liability to employers with fifteen or more

**2.** The Defendants do not dispute that Plaintiff    Walker's administrative charge was timely filed.

employees ... in part because Congress did not want to burden small entities with the costs associated with litigating discrimination claims. If Congress decided to protect small entities with limited resources from liability, it is inconceivable that Congress intended to allow civil liability to run against individual employees.

*Id. Miller* also interpreted *York v. Tenn. Crushed Stone Ass'n*, 684 F.2d 360, 362 (6th Cir.1982), as holding that individuals may only be liable in their official capacities under Title VII. *Id.*

The Seventh, Eighth and Tenth Circuits have also rejected the concept of individual liability under Title VII. *See Smith v. St. Bernards Reg. Med. Ct.*, 19 F.3d 1254 (8th Cir.1994); *Sauers v. Salt Lake Co.*, 1 F.3d 1122 (10th Cir.1993); *Huebschen v. Dept. of Health & Social Services*, 716 F.2d 1167, 1170 (7th Cir.1983).

■ This court joins the majority and holds that Defendants Spelling and Siler cannot be sued as individuals under Title VII. There is no allegation in the complaint that they are "employers". Therefore, the Title VII claims against them must be dismissed.

### § 1983 Claims

In addition to Title VII, the Plaintiffs assert claims under 42 U.S.C. § 1983, alleging that the Defendants violated their rights to due process and equal protection under the Fourteenth Amendment of the United States Constitution, and under the Tennessee Constitution, Art. I, § 8. These claims are entirely without merit.

■ It is axiomatic and indisputable that purely private conduct by private individuals or corporations is not actionable under § 1983. The alleged infringement of constitutional rights under the Fourteenth Amendment must be "fairly attributable to the state." *Rendell–Baker v. Kohn*, 457 U.S. 830, 838, 102 S.Ct. 2764, 2770, 73 L.Ed.2d 418 (1982) (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937, 102 S.Ct. 2744, 2753, 73 L.Ed.2d 482 (1982)); *Volunteer Medical Clinic Inc. v. Operation Rescue*, 948 F.2d 218, 227 (6th Cir.1991); *Crowder v. Conlan*, 740 F.2d 447, 449 (6th Cir.1984). Private

individuals may be liable under § 1983 only where there is significant state involvement in the actions taken. *See Wagner v. Metropolitan Nashville Airport Auth.*, 772 F.2d 227, 229 (6th Cir.1985).

■ In this case, Plaintiffs have alleged no state action or state involvement that could support a § 1983 claim. The conduct complained of was solely that of private individuals or corporations, and was in no way taken under "color of law." Therefore, all of the Plaintiffs claims under § 1983 must be dismissed.

### State Law Tort Claims

In addition to the Title VII claims, Plaintiffs assert various state law claims against the Defendants, including outrageous conduct/intentional infliction of emotional distress, negligent infliction of emotional distress, assault and battery, invasion of privacy, and negligence *per se*. The Defendants contend that these allegations fail to state a claim upon which relief may be granted.

### Defendant Brown Group, Inc.

■ Defendant Brown contends that the Plaintiffs' state law claims against it are barred by the exclusivity provision of the Tennessee Workers' Compensation Law. Tenn.Code Ann. § 50–6–108. Generally, common law tort claims against an employer arising out of work-related injuries are barred unless the worker can show that the employer actually intended to injure the employee. *Coffey v. Foamex L.P.*, 2 F.3d 157, 160 (6th Cir.1993); *Blair v. Allied Maintenance Corp.*, 756 S.W.2d 267, 270 (Tenn.Ct. App.1988). Plaintiffs allege that the Defendants' conduct was willful, wanton, deliberately indifferent, and amounted to gross negligence. However, under Tennessee law, "[t]here is a distinct difference in fact and law between gross or criminal negligence and *actual intent to injure*." *King v. Ross Coal Co.*, 684 S.W.2d 617, 619 (Tenn.Ct.App.1984) (quoting *Cooper v. Queen*, 586 S.W.2d 830, 833 (Tenn.Ct.App.1979).

[T]he common-law liability of the employer cannot be stretched to include accidental

**962**

injuries caused by the gross, wanton, wilful, deliberate, intentional, reckless, culpable, or malicious negligence, breach of statute, or other misconduct of the employer short of *general intentional injury*.... Even if the alleged conduct goes beyond aggravated negligence, and includes such elements as knowingly permitting a hazardous work condition to exist, ... this still falls short of the kind of *actual intention* to injure that robs the injury of accidental character.

*Id.* (quoting 2A Lawson, Workmen's Compensation Law, § 68.13 at 13–5 (1982)).

■ The Plaintiffs in this case have failed to allege that Defendant Brown actually intended to injure them in any way. As stated, the allegations are only that the Defendant's conduct was wilful, wanton, deliberate, and grossly negligent. Therefore, the Plaintiffs' state law tort claims against Defendant Brown do not fall outside the workers' compensation scheme, and are barred by the exclusivity provision, Tenn.Code Ann. § 50–6–108.[3]

### Defendants Spellings and Siler

### Outrageous Conduct

Defendants Spellings and Siler first contend that Plaintiffs' claims of outrageous conduct/intentional infliction of emotional distress must be dismissed. Defendants assert that the complaint fails to allege conduct on their part which could be considered outrageous.

■ In order to prove a claim of outrageous conduct/intentional infliction of emotional distress, Plaintiffs must establish two factors: 1) the conduct complained of must have been outrageous, not tolerated in civilized society; and 2) as a result, there must be serious mental injury. *Dunn v. Moto Photo, Inc.,* 828 S.W.2d 747, 751 (Tenn.Ct. App.1991); *see also Fann v. City of Fairview,* 905 S.W.2d 167, 174 (Tenn.Ct.App. 1994). In *Dunn,* the court quoted approvingly from the *Restatement (Second) of Torts* § 46 cmt. b:

It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct is characterized by 'malice', or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all bounds of decency, and to be regarded as atrocious, and utterly untolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous.'

828 S.W.2d at 751.

The Defendants assert that courts applying Tennessee law have circumscribed recovery for claims of outrageous conduct, particularly in the employment setting. However, the cases cited by the Defendants were decided on a case by case basis; the denial of recovery for outrageous conduct was not based on the fact that the incidents occurred in an employment setting.

**3.** Plaintiffs rely on *Harman v. Moore's Quality Snack Foods,* 815 S.W.2d 519 (Tenn.Ct.App. 1991), for the proposition that tort claims based on incidents of sexual harassment are not the type of injury the workers' compensation law was designed to cover. In *Harman,* the Tennessee Court of Appeals held that claims of discrimination and sexual harassment brought pursuant to the Tennessee Human Rights Act ("THRA"), Tenn.Code Ann. § 4–21–101 *et seq.,* are not necessarily barred by the exclusivity provision of the Workers' Compensation Law. Such claims are actionable if they are based upon "real discrimination" rather than employer misconduct that is a "normal part of the employment relationship." *Id.* at 527. In reaching this holding, the court relied in part on a Florida case, *Byrd v. Richardson-Greenshields Sec., Inc.,* 552 So.2d 1099, 1102–04 (Fla.1989), which held that common-law tort claims arising out of incidents of sexual harassment were not barred by the exclusivity rule of the Florida workers' compensation statute. Although the Tennessee Court of Appeals cited *Byrd,* the holding in *Harman* concerned only claims under the THRA, not common-law tort claims. Although Plaintiffs refer briefly to the THRA in their memorandum in opposition to the motion to dismiss, the complaint contains no THRA claims. This court has found no Tennessee decisions allowing common-law tort claims arising out of sexual harassment to be brought against an employer.

■ Plaintiffs' allegations against Defendant Siler are clearly insufficient to state a claim for outrageous conduct/intentional infliction of emotional distress. Indeed, there are no specific factual allegations at all against Defendant Siler, only general conclusory statements. With regard to Defendant Spellings, however, there are extensive allegations as to his continued harassment of the Plaintiffs, including requests for sexual favors and sexual liaisons, lewd comments, suggestions, and gestures, and verbal abuse in front of co-workers. There is even an allegation by Plaintiff Myrick that Defendant Spellings followed her to her home and attempted to get into her house through a window while she was there alone. Plaintiffs also allege that they suffered serious mental injury as a result of Spellings' harassment. These allegations are sufficient to state a claim for outrageous conduct/intentional infliction of emotional distress and survive a motion to dismiss.

### Negligent Infliction of Emotional Distress

■ Under Tennessee law, a plaintiff may recover for the negligent infliction of emotional distress only in limited circumstances. Recovery is permitted for

> "physical" pain, suffering and disability resulting from fright or psychic shock caused by *fear for his or her own safety* which is brought about by the negligence of the defendant, sometimes referred to as the "zone of danger rule," . . . .

*Shelton v. Russell Pipe & Foundry Co.*, 570 S.W.2d 861, 864 (Tenn.1978); *see also Carroll v. Sisters of St. Francis Health Serv., Inc.*, 868 S.W.2d 585, 594 (Tenn.1993) (actual "physical injury," i.e., exposure to HIV, required in order to recover for fear of contracting AIDS); *Laxton v. Orkin Exterminating Co.*, 639 S.W.2d 431 (Tenn.1982) (recovery permitted where plaintiffs ingested contaminated water).

■ The Plaintiffs in this case have not alleged that their mental distress was caused by any physical injury, or ingestion or exposure to toxic substances or disease as a result of Defendants' negligence. Therefore, the complaint fails to state a claim for negligent infliction of emotional distress.

### Assault and Battery

■ In *Kite v. Hamblen*, 192 Tenn. 643, 241 S.W.2d 601, 603 (1951), the Tennessee Supreme Court stated that "[a]n indispensable element of the evidence necessary to support [a claim of assault and battery] is that the striking is wilful and intentional." *See also Moffitt v. United States*, 430 F.Supp. 34, 37–38 (E.D.Tenn.1976). Therefore, there must be an allegation of a "striking" or offensive touching on the part of a defendant.

The Plaintiffs do not specify which of the Defendants in this case allegedly committed assault and battery. The relevant facts alleged in the complaint, however, indicate that objectionable touching occurred when Plaintiffs Roberson and Lowery were grabbed or pinched by an co-worker named Dwayne Frazier. Frazier is not a Defendant in this action. There is no allegation of any striking or touching on the part of either Defendant Spellings or Defendant Siler. Therefore, the complaint fails to state a claim against these Defendants for assault and battery.

### Invasion of Privacy

The Tennessee Supreme Court recognized the common law tort of invasion of privacy in *Langford v. Vanderbilt Univ.*, 199 Tenn. 389, 287 S.W.2d 32, 38 (1956). Subsequently, in *Martin v. Senators, Inc.*, 220 Tenn. 465, 418 S.W.2d 660, 664 (1967), the Court held that liability for invasion of privacy "exists only if the conduct is such that a defendant should have realized it would be offensive to persons of ordinary sensibilities; and that it is only where the intrusion has gone beyond the limits of decency that liability accrues. . . ." *See also Swallows v. Western Elec. Co.*, 543 S.W.2d 581, 583 (Tenn.1976); *Fann v. City of Fairview*, 905 S.W.2d 167, 170 (Tenn.Ct.App. 1994); *Dunn v. Moto Photo, Inc.*, 828 S.W.2d 747, 751 (Tenn.Ct.App.1991).

The Restatement (Second) of Torts, § 652A (1977), recognizes four distinct types of invasion of privacy: 1) appropriation, 2) false light publicity, 3) public disclosure of private facts, and 4) intrusion. Although no Tennessee state court has recognized these distinctions, federal courts applying Tennes-

see law have used these categories in analyzing invasion of privacy claims. *See Evans v. Detlefsen,* 857 F.2d 330, 338 (6th Cir.1988); *Lineberry v. State Farm Fire & Cas. Co.,* 885 F.Supp. 1095, 1098–99 (M.D.Tenn.1995); *International Union v. Garner,* 601 F.Supp. 187, 189–91 (M.D.Ten.1985); *Beard v. Akzona, Inc.,* 517 F.Supp. 128, 131 (E.D.Tenn. 1981); *Cordell v. Detective Publications, Inc.,* 307 F.Supp. 1212, 1217 (E.D.Tenn.1968). The Plaintiffs allege all four types of invasion of privacy.[4]

■ The first type of invasion of privacy, appropriation, involves the use of another's name or likeness without consent. *Lineberry,* 885 F.Supp. at 1098; *Garner,* 601 F.Supp. at 190. The second category, public disclosure of private facts, is committed by one who publicly discloses a matter concerning the private life of another, where the matter is not of legitimate public concern and the disclosure would be highly offensive to a reasonable person. *Lineberry,* 885 F.Supp. at 1098; *Garner,* 601 F.Supp. at 190–91; *Beard* 517 F.Supp. at 132–33. The third type of invasion of privacy, false light publicity, involves publicizing a matter that places another before the public in a false light that would be highly offensive to a reasonable person. *Lineberry,* 885 F.Supp. at 1098–99; *Garner,* 601 F.Supp. at 189–90. The last category, intrusion, is committed by "[o]ne who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, . . . if the intrusion would be highly offensive to a reasonable person." *Evans,* 857 F.2d at 338 (quoting Restatement (Second) of Torts, § 652B (1977)); *Lineberry,* 885 F.Supp. at 1098; *Garner,* 601 F.Supp. at 191; *Beard,* 517 F.Supp. at 131–32.

■ The court finds that the complaint in this case fails to state a claim against Defendants Spellings and Siler with regard to the first two types of invasion of privacy, appropriation and public disclosure of private facts. The complaint also fails to state a claim against the Defendants for false light publici-

ty, even with the allegation by Plaintiff Spurgeon that she has been unable to find like employment because Defendant Spellings provided false, harmful information to prospective employers. Plaintiff Spurgeon does not allege that Defendant Spellings acted with "malice," that is, with knowledge that the statements were false, or with reckless disregard as to their falsity. *Lineberry,* 885 F.Supp. at 1098–99 (quoting *New York Times Co. v. Sullivan,* 376 U.S. 254, 279–80, 84 S.Ct. 710, 725–26, 11 L.Ed.2d 686 (1964) and Restatement (Second) of Torts § 652E (1977)). Indeed, the false, harmful statements themselves are not specified.

■ The complaint also fails to state a claim against Defendant Siler and, for the most part, against Defendant Spellings, for intrusion. The court does find, however, that Plaintiff Gracie Myrick has stated a claim against Defendant Spellings for intrusion. As stated previously, the complaint specifically alleges that Defendant Spellings followed Plaintiff Myrick home and on several occasions attempted to enter her home without her consent, going so far as trying to get in through a window. These allegations are sufficient to state a claim for unreasonable and offensive intrusion upon Plaintiff Myrick's seclusion.

*Negligence Per Se*

■ Although the breach of a statutory or regulatory duty may constitute negligence *per se* if the injured party is a member of the class of persons the law was intended to protect, "not every violation of a statute or ordinance is negligence *per se.* [I]t depends on the type of statute or ordinance and the reason it was adopted." *See Snider v. Snider,* 855 S.W.2d 588, 590 (Tenn.Ct.App.1993). Generally, a claim of negligence *per se* may be supported only by statutes and regulations relating to public safety, such as health regulations and rules of the road. *See, e.g., Bellamy v. Federal Express Corp.,* 749 S.W.2d 31, 35 (Tenn.1988); *Mansfield v. Colonial Freight Sys.,* 862 S.W.2d 527, 531 n. 3

---

4. Defendants have stated that in Plaintiffs' memorandum in response to the motion to dismiss it is asserted that the invasion of privacy claim applies only to Plaintiff Spurgeon. However, the

memorandum states that the claim applies "most specifically" to Plaintiff Spurgeon, not that it applies solely to her.

965

(Tenn.Ct.App.1993); *Carney v. Coca–Cola Bottling Works,* 856 S.W.2d 147, 150 (Tenn. Ct.App.1993); *see also Justice v. Pendleton Place Apartments,* 40 F.3d 139, 143 n. 4 (6th Cir.1994).

■ Other than Title VII, Plaintiffs cite no statutes, regulations, or ordinances in the complaint that were allegedly violated by the Defendants. Plaintiffs cite only to the Fourteenth Amendment of the United States Constitution, and to Article I, § 8 of the Tennessee Constitution. These provisions simply are not the type of law that the negligence *per se* doctrine was meant to encompass. Therefore, Plaintiffs have failed to state a claim for negligence *per se.*

### Conclusion

In accordance with the foregoing discussion, the motion to dismiss on behalf of Defendant Brown Group, Inc., is PARTIALLY GRANTED: the claims against Brown Group, Inc., under 42 U.S.C. § 1983, and all of the state law tort claims against Brown Group, Inc., are hereby DISMISSED. The motion to dismiss on behalf of Defendants Spellings and Siler is also PARTIALLY GRANTED: the claims against Defendants Spellings and Siler under 42 U.S.C. § 1983 and under Title VII are DISMISSED; all state law tort claims against Defendant Siler are DISMISSED; and the state law tort claims against Defendant Spellings are DISMISSED *with the exception of* all the Plaintiffs' outrageous conduct/intentional infliction of emotional distress claims, and the invasion of privacy (intrusion) claim of Plaintiff Gracie Myrick.

IT IS SO ORDERED.